## STATE *vs.* CLEVELAND GROVER.

## Cumberland.    Opinion April 11, 1902.

*Evidence.    Confessions.    Practice.*

1.  The rule in this state governing the admission in evidence of extra-judicial statements of the respondent in a criminal trial is, that they are admissible unless it appears they were prompted by some hope of a personal benefit or fear of a personal loss of a temporal nature, excited by some other person apparently having some power or influence to bring about the benefit or loss.

2.  Whether the statements of a respondent offered in evidence in a criminal trial were voluntary, or were prompted by such hope or fear excited by a third person as above stated, is itself a question of fact to be determined by the presiding justice at the trial from the evidence adduced to him on that issue.  The law court will not reverse his decision upon that question of fact, at least until it is made to appear that the contrary decision is the only possible one in reason.

3.  *Held;* that the decision of the presiding justice that the statements were voluntary, and therefore admissible in evidence, does not seem to be without evidence or reason.

Exceptions by defendant.    Overruled.

The defendant was indicted, tried and found guilty under R. S., of Maine, c. 119, § 1, for wilfully and maliciously setting fire to the dwelling-house of another with intent to burn and burning the same in the night time.   The defendant took exceptions to the rulings of the presiding justice in admitting the testimony of two witnesses as to a confession made to them by the respondent, on the ground that the confessions were obtained by inducements or threats and were therefore not voluntary.

*R. T. Whitehouse,* county attorney, for state.

*W. H. Gulliver,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, PEABODY, JJ.

EMERY, J. The exceptions in this case raise the question of the legal admissibility in evidence of extrajudicial confessions by the respondent in a trial for crime. The decided cases upon this question are so numerous and conflicting that it is useless to attempt their consideration. They vary in different jurisdictions, and also from time to time in the same jurisdiction. Hence we shall content ourselves with the statement of a few principles and with few citations.

Confessions by the respondent that he committed the offense for which he is being tried have prima facie some probative force, and hence as a general rule are admissible in evidence against him. The value of such evidence is of course wholly for the jury. When, however, the confession was made under such circumstances as show that it was extorted from the respondent by some threat, or drawn from him by some promise, and was made to avoid the evil threatened, or to obtain the good promised, rather than from a desire to relieve his conscience or to state the truth, it is regarded by the law as involuntary and hence not to be used against him. This rule of exclusion was adopted, not because such a confession has no probative force at all, but rather out of tenderness for the respondent in view of his unfavorable and even dangerous position. In earlier days when the respondent could not have counsel and could not testify in his own behalf, the courts were ordinarily and properly quite strict in keeping from the jury evidence of confessions when there was any reasonable doubt of their being voluntary. Since the respondent is now allowed counsel, and is also allowed to testify in explanation of his acts and statements, there is less reason for such restrictions and more may be left to the jury as to the probative force of such confessions.

In this state in *State* v. *Grant,* 22 Maine, 171, this court quoted the old rule of exclusion laid down by Warickshall's case, 1 Leach, 298, and then said apparently with approval, "This rule appears to have been limited by subsequent cases, so that there must appear to be some fear of personal injury, or hope of personal benefit of a

temporal nature, to exclude the confession." In that case the respondent was told that he had better confess in order to save his brother from jail, but no assurance was given him that he, himself, would fare any better by confessing. A confession thus made was held admissible. The statement of the rule above quoted from *State* v. *Grant*, was approved in *Commonwealth* v. *Morey*, 1 Gray, 461. In a later case in Maine, *State* v. *Gilman*, 51 Maine, 206, 223, this court again said, concerning the rule of exclusion of statements made by a respondent: " The true test of admissibility in this class of cases is, was the statement offered in evidence made voluntarily, without compulsion? If this proposition be answered in the affirmative then the statement is clearly admissible in principle; but if not voluntary, if obtained by any degree of coercion, then it must be rejected." In 1 Greenl. Ev. 219, it is said, " The material inquiry, therefore, is whether the confession has been obtained by the influence of hope or fear applied by a third person to the prisoner's mind."

To make a confession voluntary in the legal sense, it is not necessary that it should be volunteered, or made without request or interrogatory. It is voluntary, though made in answer to questions or even solicitations, if it be made from the free, unrestrained will of the respondent. Again, the constraint to make a confession involuntary must come from without, be imposed by some other person apparently vested with power to punish or reward. Hence if without such outside interference the respondent himself reasons that he better confess simply in order to avoid some temporal evil impending over him or to obtain some temporal personal good, his confession is still voluntary, being from his unconstrained will. The foregoing we think is a sufficient exposition of the law of this state applicable to this case.

But the question whether a particular confession offered in evidence was voluntary or was obtained by constraint or coercion as above defined, is not a question of law. It is to be determined by evidence. The evidence upon this issue may be conflicting and confused. Even when the evidence is uncontradicted, different inferences may often be drawn from it by different men and each inference be

logically possible. Hence, the question must be determined by the presiding justice as a question of fact. In 1 Greenl. Ev. 219, it is stated that the matter rests wholly in the discretion of the judge. Upon exceptions to his opinion on this question the law court should not reverse his decision merely because it would itself have come to a different conclusion, but only when the circumstances are such that it can say as matter of law, that the confession was not voluntary in the legal sense. It will regard the findings of the presiding justice upon this question of fact, as it does the findings of a jury upon questions of negligence, as entitled to stand unless the contrary inference is the only reasonable one. For the law court to set aside a verdict of conviction merely because it differs from the presiding justice upon a preliminary question of·fact which must necessarily be decided by him, would cause intolerable delays and expense in the enforcement of the criminal law. At the second trial the evidence upon this preliminary question might be very different from that at the first trial and require a new decision upon the new evidence, subject to be set aside by the law court, and so on until it shall happen that the trial judge and the reviewing judges agree in their views of the same evidence.

It should be remembered that if the presiding justice does err in his finding of fact and admits the confession in evidence, when the justices of the law court would not, the respondent can then appeal to the jury to exclude it from consideration as improperly obtained, and can show all the circumstances tending to destroy or weaken its probative power. He can also require the presiding justice to instruct the jury it should not give credit to the confession if thus improperly obtained.

In *Commonwealth* v. *Preece*, 140 Mass. 276, the court said: "When a confession is offered·in evidence the question whether it is voluntary is to be decided by the presiding justice. If he is satisfied that it is voluntary it is admissible; otherwise it should be excluded." After reviewing the evidence the court further said: "As the evidence was conflicting we cannot say as matter of law that the decision of the presiding justice admitting the evidence was erroneous." In *Commonwealth* v. *Culver*, 126 Mass. 464, it was held that upon

this preliminary question the presiding justice was bound to hear evidence offered by the respondent as well as the evidence offered by the state.

It remains to apply these legal principles to the case at bar. The respondent was arrested and indicted for setting fire to the dwelling-house of Mrs. McKeen. After the constable had arrested the respondent, he drove with him to the selectmen's office and called out the chairman of the board. On the chairman reaching the carriage, the constable said "This is the boy that set the fire." The selectman said "Did you set this fire, Cleve?" He answered that he did. The selectman then asked how he did it, and he answered that he wanted to get even with Mrs. McKeen. The next day the insurance commissioner, Mr. Carr, in company with the selectman and the constable, visited the respondent in his room in the police station, and after introducing himself told him he was under no obligation to make any statement. The respondent answered "That is all right, I committed the crime and I know I have got to be punished for it."

It is not contended that at either of these interviews anything was said in the way of threat or promise to induce a confession of guilt; but the respondent does contend that these confessions were directly induced by threats and promises made by the constable at the time of the arrest. The only evidence as to these is from the constable himself. Upon cross-examination he detailed his conversation with the respondent as to his whereabouts at night during the week of the fire, and on the night of the fire and as to his trouble with Mrs. McKeen, and then said, after respondent denied his guilt, "I told him I thought I had evidence enough of some matches he had purchased and told him I didn't think it would be any worse for him, if he done it, not to lie about it than it would to own up. And we talked along a little while and he says, "Everybody in Brunswick dislikes me. I don't care what happens to me. I might just as well own up that I set the fire." The constable also testified that he might have said to the respondent that it would be better for him to tell the truth, that he used the words "I don't want you to lie to me; I want you to tell me the truth." The constable vigorously denied that he made any threats or promises of what would or might

happen to the respondent in case he denied or admitted his guilt.

The presiding justice excluded from the jury the confession thus made to the constable, but admitted the confessions made to the chairman of the selectmen and to the insurance commissioner. The ruling admitting those confessions was of course based on his finding as matter of fact that they were not made as the result of any threats or promises made by the constable which constrained the free will of the respondent.

When it is remembered that in the absence of evidence all confessions are presumed to be voluntary, and the burden is on the respondent to rebut that presumption by evidence, we cannot be expected to say, upon this evidence and against the finding of the presiding justice, that his inference from the evidence was logically impossible, that as matter of law the confessions admitted were the result of threats or promises of a temporal nature.

*Exceptions overruled. Judgment for the state.*