## STATE OF MAINE *vs.* WILLIS M. PRIEST.

### Piscataquis.    Opinion March 29, 1918.

*Questions to be considered by Law Court on appeal from verdict in criminal case.*
*General rule governing the admissibility of confessions.    Test to be applied in*
*admitting confessions.   Meaning of voluntary confession.   Rule to be applied*
*in determining whether a confession is a voluntary or involuntary one.*
*Ruling of court on the admissibility of a confession; how reserved.*
*Weight of confession.   General rule of responsibility where*
*two persons conspire for the common object of robbery*
*and in carrying out their plan death is caused.*

The respondent stands convicted of the murder of one George Herbert.   Upon
appeal from the decision of the presiding justice denying respondent's motion
for a new trial, and upon exceptions it is

*Held:*

APPEAL.

1.   That the question before the Law Court on the appeal is whether, in view of
all the testimony, the jury were warranted in believing beyond a reasonable
doubt, and therefore in declaring by their verdict, that the respondent was
guilty of the offense with which he was charged.

2.   A study of the evidence leads the court to answer this question in the affirma-
tive without the slightest hesitation or compunction.   The respondent practi-
cally convicted himself by his own testimony.   No other conclusion could
have been reached by a jury regardful of the oath they had taken.

3.   It is obvious that the respondent and his accomplice, Wood, left their home
in Milo and went to Herbert's camp many miles distant with the deliberate
and well formed intention of committing a robbery; but in this case robbery
unfortunately culminated in murder.

EXCEPTIONS.

1.   The confessions were properly admitted.   The legal test of their admissibility
is whether they were extorted by some threat or elicited by some promise;
or on the other hand were made from a willingness on the part of the accused
to tell the truth and relieve his conscience.   The former are involuntary and
inadmissible, the latter voluntary and admissible.

2.   The term voluntary, in the legal sense, does not mean that such statements
must be made spontaneously, that they must be volunteered.   They are
equally voluntary if made in response to interrogatories, provided they eman-
ate from the free will of the accused.

3. The evidence offered by the State in rebuttal of the respondent's denial of certain facts and conversations was also admissible. It did not come within the rule that the cross examiner of a witness on collateral matters is bound by the answers. Here the denial came from the respondent and pertained directly to his conduct in connection with the crime of which he was charged.

4. Certain questions put to the respondent by the court may have reflected upon the respondent's credibility, but in view of the overwhelming volume of testimony proving his guilt, the harm, if any, must have been negligible. A just verdict is not to be set aside because of a slight but comparatively harmless error in the admission or rejection of evidence.

5. The alleged failure on the part of the presiding Justice in his charge to distinguish between the acts done by Priest and those done by Wood, the respondent claiming that Wood and not he had struck the fatal blow, creates no ground for exception.

Priest and Wood were conspirators engaged in the perpetration of a felony. While so engaged each was responsible for the acts of the other as well as for his own. When two persons conspire together for the common object of robbery, and in pursuance of that object one of them does an act which causes the death of a third party, both are regarded as principals and both may be convicted of murder. The State need neither allege nor prove that the respondent used the weapon with which the killing was done.

Respondents were indicted for the crime of murder at the September term of the Supreme Judicial Court, Piscataquis County. After trial, respondents were both found guilty. Respondents duly filed an appeal and also exceptions to certain rulings of presiding Justice. Judgment in accordance with opinion.

Case stated in opinion.

*Guy H. Sturgis, Attorney General of the State of Maine, and James H. Hudson, County Attorney for Piscataquis County,* for the State.

*Leon G. C. Brown, and John S. Williams,* for the respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

CORNISH, C. J. In the early evening of Tuesday, March 14, 1916, the body of one George Herbert was discovered by two neighbors lying on the floor of his camp, face downward in a pool of blood. This camp was located at Rand Cove in Lake View Plantation, at a remote and somewhat secluded spot between Schoodic Lake and a branch of the Bangor & Aroostook Railroad known as the Medford cut-off. Herbert was last seen alive about noon of the previous day. He was

a man seventy-two or seventy-three years of age, whose history and antecedents were unknown, and who had lived alone in this camp for several years, a recluse, of quiet habits and somewhat feeble health. He was reputed to have considerable money about him and the report was not without foundation as subsequent events proved.    The room, twelve by sixteen feet in size, in which Herbert was lying, was found to be in great disorder, showing not only evidences of a struggle but the apparent rifling of its contents.    Chairs were overturned, the bedding and clothing were scattered on the floor, stains and spatters of blood appeared on the table, the stove, the floor and the walls, while the shade at one window had been drawn down by a blood stained hand. Mr. Herbert's head was bruised in several places, his scalp broken, and above the left ear his skull was shattered for a space of about three inches in length by one and one-half inches in width.    Death was due, as the physicians testified, to this fracture of the skull and the consequent loss of blood.    Fragments of a broken bottle upon some of which were found blood and matted hair, were scattered over the floor, probably the instrument with which the fatal blow was struck.    A pail of water and a blood marked towel showed where the perpetrators had washed and wiped their hands after the scene had closed.    The tracks of two men in the deep snow led from the camp to the shore of the lake and thence up the lake for a considerable distance until they reached and followed the railroad track.    These were, at the time, the only clues.

The officers and a detective promptly took up the case and ferreted out many facts that pointed to the guilt of the respondent.    On July 19, 1916, he was arrested in Portland.    After being taken to the police station he was interrogated by the detective in presence of police officers and his answers connected him directly with the tragedy.    Another young man, named Roy Wood, was his accomplice, as he stated, and this accomplice has never been apprehended.    The evidence leads to the reasonable inference that he fled to Canada the next day after Herbert was killed.    He has never been found, although extended search has been made for him.    The next day, July 20, the respondent was taken to Dover and at the Dover court house was interrogated at length by the County Attorney.    This examination was taken down by a stenographer and a transcript of the notes was subsequently signed by the respondent.    The admissibility of these two confessions, or of the statements made by Priest on these two occasions, was resisted by

his counsel but they were admitted by the court and the exceptions on this branch of the case will be considered later.

At the March term, 1917, of the Supreme Judicial Court in Piscataquis County, the respondent was tried on an indictment for murder and convicted by the jury. The case is now before the Law Court on appeal from the decision of the Justice before whom it was tried, denying a motion for new trial, (R. S., Chap. 136, Sec. 28), and on exceptions.

APPEAL.

The evidence, covering nearly seven hundred printed pages, has been examined with care and as a result the court has no hesitancy in holding that the verdict is fully justified. The respondent took the stand and testified in his own behalf, and from his testimony alone, balanced in the judgment of reasoning men, conviction could well have followed. Out of his own mouth, as well as the mouth of others, he was condemned. True, on some points he attempted to deny certain facts or to evade the consequences of certain acts, but his attempted explanations did not explain and his attempted excuses did not excuse. The intelligence of the jury pierced the veil, and separated the true from the false and the probable from the improbable.

Viewing the tragedy in the light of all the testimony and the circumstances, it is obvious that the respondent and his companion Wood left their home in Milo, where they had both been at work until within a short time, with the deliberate and well formed intention of going to Rand Cove, a distance of about twenty miles, and obtaining money from Herbert, both being in need of it as Priest testified. Robbery was undoubtedly their purpose, but in this case robbery unfortunately culminated in homicide. The respondent's familiarity with the premises, having worked near by Herbert's camp during the previous Summer, Fall and early Winter, his knowledge of Herbert's solitary life and reputed possession of money, the circuitous route taken by them on Monday, March 13, to reach the camp from Milo, partly by rail and partly on foot four miles across Schoodic Lake in the midst of a heavy snow storm, the scene in the camp after their arrival, two young men each about twenty years of age over against one of seventy-three, the condition of the camp after the struggle, the nature of the

wounds that caused his death, the heartless abandonment of him in his desperate or dying condition, although help could have easily been secured, the route of hurried departure designed to escape detection, their studied separation after the train was taken, the stealing from Herbert's camp of four hundred dollars as the fruit of their wicked enterprise, its equal division between them soon after they left, the retention by the respondent of his share and the sending of a little over one hundred dollars to his friend Ferris in Portland, as he admits, or one hundred and fifty as Ferris testifies, with instructions for Ferris to keep it for him and if he did not call for it in ten or fifteen years to keep it for himself, his subsequent going to Portland where he spent his ill gotten gains, and where he was finally arrested, all combine to prove beyond any reasonable doubt a premeditated and concerted robbery, ending in the brutal murder of an innocent, unprotected and somewhat enfeebled old man.

The claim of the respondent that he simply went to Herbert to borrow money with which to meet an outstanding and pressing bill, while on their way to Millinocket for work, that Herbert twice treated them to liquor and himself drank with them, then suddenly, without the slightest provocation, became seemingly crazy and pulling a revolver from his bed threatened to kill them, and when this weapon was wrested from him he seized Priest by the throat, threw him twice upon his knees, and a severe struggle ensued, Herbert having the better of the assault until Wood seized a stick of wood and struck Herbert over the head, felling him to the floor, this claim of self defense needs no other refutation than the number and age of the respective parties, the entire absence of any marks, bruises or even scratches upon Wood or Priest the next morning after the affray, and the condition of Herbert as left by them with bruised and shattered skull lying in his own blood. The "poor poor dumb mouths" speak to disprove the flimsy excuse of self defense.

The single question before the Law Court on the appeal is whether, in view of all the testimony, the jury were warranted in believing beyond a reasonable doubt, and therefore in declaring by their verdict, that the respondent was guilty of murder. *State* v. *Lambert*, 97 Maine, 57; *State* v. *Albanes*, 109 Maine, 199. A painstaking study of the case leads us to answer this question in the affirmative without the slightest hesitation or compunction. In fact we think no other conclusion could have been reached by a jury, regardful of the oath

they had taken, than the guilt of the accused.  The appeal cannot be sustained.

EXCEPTIONS.

Exceptions number 1, 2 and 3, relate to the admission of the so called extra-judicial confessions, one made to the detective and arresting officer at the police station in Portland on July 19, 1916; the second to the County Attorney in the presence of officers in Dover on July 20, 1916; and the third a mere admission on July 21, 1916, as to a particular point of his story which had excited the curiosity of the officers.  These three exceptions will be considered together.  Counsel for respondent contends that these confessions were obtained by inducements or threats, were involuntary and therefore inadmissible.

The rule established in this State governing the admission of extra-judicial statements or confessions of the respondent in a criminal case was clearly set forth in the leading case of *State* v. *Grover*, 96 Maine, 363.  It was there stated that the test of their admissibility is whether the statements or confessions were extorted by some threat or elicited by some promise, whether they were made for the purpose of escaping threatened evil or to secure promised good, thereby being regarded as involuntary, or were made from a willingness on the part of the accused to tell the truth and relieve his conscience, thereby being regarded as voluntary.  The former are inadmissible, the latter admissible.  As was further stated in that case, in earlier days when the respondent was deprived of counsel and not allowed to testify in his own behalf, the courts were quite strict in keeping from the jury evidence of confessions when there was any reasonable doubt of their being voluntary.  But, at the present time, when the respondent is allowed the assistance of counsel and also is permitted to testify in his own behalf in explanation of his acts and statements, there is less reason for such restrictions, and more may be left to the jury as to the probative force of such confessions.  The term voluntary in the legal sense does not mean that such statements must necessarily be made spontaneously, that they must be volunteered.  They are equally voluntary if made in response to interrogatories, provided they emanate from the free will of the accused.  Whether in a given case the alleged confession is voluntary or involuntary is a question of fact to be determined by the presiding Justice upon evidence offerable by both

sides, and his ruling upon that preliminary point can be reversed by the Law Court only when the court can find as a matter of law that the confession was involuntary in the legal sense. His finding has the force of the verdict of a jury and is allowed to stand unless the contrary inference is held to be the only reasonable one. After its admission by the presiding Justice its weight is for the jury, depending upon all the circumstances under which it was obtained, and the respondent then has the right to ask the jury to give little heed to it or to disregard it utterly because improperly secured. The presiding Justice may also instruct the jury that they shall not give credence to it, if they find it to have been improperly obtained, even though he has allowed it to be offered.

In the case at bar these rules were strictly adhered to and the legal rights of the respondent were safeguarded with unusual care and caution. Ordinarily the evidence upon the question of admissibility is taken out before the jury and at its close the ruling is made. Here this preliminary evidence was heard first by the presiding Justice in the absence of the jury, evidence was introduced on both sides at considerable length and the court ruled that the confessions were admissible. Then the same preliminary evidence was again introduced in the presence of the jury, the same ruling was made and the confessions were admitted.

We are of the opinion that the ruling of the presiding Justice was correct. It appeared that in the Portland police station, before the respondent made any statements whatever, he was told by the detective to be careful and that any statements made by him might be used against him in court. It also appeared that at Dover the County Attorney prefaced his interrogatories by this declaration: "I am the County Attorney of Piscataquis County. I understand that you made certain statements to Mr. Landry (the detective) and we thought we would give you an opportunity to tell it as it is. We want the truth. Of course you understand that this may be used later in Court proceedings and I understand that you are willing to make this statement of your own free will and accord. Is that right, Mr. Priest?" and Mr. Priest replied, "Yes sir." Then followed a detailed examination taken down by a stenographer, in the course of which the respondent also stated that he had answered Mr. Landry's questions voluntarily in Portland. There was no evidence of either threats or promises, of fear, or hope of reward on either occasion. The elements

essential to an involuntary confession were wholly lacking. No advantage was taken of the respondent nor sought to be taken. The truth was sought and he was ready and willing to tell his story.

The third exception, relating to the question put to him on July 21st, as to why his companion and himself after their departure had left the railroad track at a certain point and concealed themselves beneath a tree, and the respondent's answer that it was because a train was coming, was a mere admission. *State* v. *Gilman*, 51 Maine, 206, 225. Moreover, the respondent, when on the stand, corroborated the statement he had made to the officer. In fact the same is substantially true of the important facts contained in the two confessions. In practically all essential particulars the respondent, as a witness before the jury, confirmed his previous statements at Portland and Dover, and it is significant that he himself did not claim that these confessions were elicited from him in any improper way. The record further shows that when admitting the confessions the presiding Justice called attention to the fact that the jury still had the power to correct any error in their admission, and again in his charge he left to the jury as a fact both the voluntariness of the confessions and their weight under all the circumstances, calling their attention specifically to the rule of law governing the situation and to the facts bearing thereon.

The respondent takes nothing by these exceptions.

EXCEPTIONS 4, 5, 6 and 7.

These relate to the admission of certain evidence offered by the State in rebuttal. On cross examination the respondent had denied certain conversations with one Ferris, his Portland friend. In rebuttal the State introduced Ferris to contradict the respondent and to state what those conversations were. The contention of counsel for the respondent is that these conversations related to immaterial matters, that the State was therefore bound by the answers received and could not contradict them. It is true that a witness cannot be cross examined on collateral matters for the purpose of subsequently contradicting and impeaching his testimony in relation to such collateral matters, *State* v. *Benner*, 64 Maine, 267, cited by respondent, but that principle has no application here. The denial here came from the party to the cause, the respondent, and the evidence was not collateral but pertained directly to his conduct in connection with

the crime for which he was being tried. Whether or not he had written to Ferris a short time before Herbert was killed, asking him to procure and send him some sleeping powders or knock-out drops and the conversation he had with Ferris in Portland after Herbert's death to the effect that if he (Priest) had had the sleeping powders "the job would not have been done that way" were vital facts as bearing upon Priest's connection with the robbery and homicide, and the premeditated character of his acts. The evidence was properly admitted.

Exception 8 relates to certain questions put by the court to the respondent, during his cross examination. The court inquired as to the reasons why the respondent and his companion did not procure aid for Herbert in the condition in which they left him, and the reply was "I think we spoke about it and we didn't dare to." Asked why not, the answer was "because of what had happened, we didn't think any one would believe us." The court then added, "Do you think so now," and the respondent replied "I don't know." Neither objection was made nor exception taken by the respondent's counsel to these questions at the time, nor did they ask to have the evidence stricken out. The last question doubtless reflected on the credibility of the respondent, but in view of the overwhelming volume of testimony proving his guilt the harm, if any, must have been negligible. A just verdict is not to be set aside because of a slight but comparatively harmless error in the admission or rejection of evidence.

The 9th and last exception is based on the alleged failure on the part of the presiding Justice in his charge to distinguish between the acts done by Priest and those done by Wood; the respondent claiming that Wood and not he had struck the fatal blow.

Priest and Wood were conspirators engaged in the perpetration of a felony. While so engaged each was responsible for the acts of the other as well as for his own. No principle of criminal law is more firmly established than this, that when two persons combine and conspire together for the common object of robbery and in pursuance of that object one of them does an act which causes the death of another both are regarded as principals and both may be convicted of murder. The State need neither allege nor prove that the respondent used the weapon with which the killing was done. 13 R. C. L., 729; *People* v. *Friedman*, 205 N. Y., 55, 45 L. R. A. N. S., 45, and note; *People* v.

*Lawrence,* 143 Cal., 148, 68 L. R. A., 193, and note; *State* v. *Smith,* 32 Maine, 369; *State* v. *Smith,* 33 Maine, 48.   This rule of law was fully explained to the jury in the charge.

This exception lacks merit.

Our conclusion therefore is, that the verdict rendered was in accordance with the law and the evidence, that the respondent was convicted of a crime of which he was undoubtedly guilty and the entry must be,

> *Appeal dismissed.*
> *Motion for new trial denied.*
> *Exceptions overruled.*
> *Judgment for the State.*