STATE OF MAINE
*vs.*
GEORGE O. TRIPP, JR.

(2 CASES)

Knox.    Opinion, May 4, 1962.

*Peter P. Sulides, County Attorney,* for the State.

*Harold J. Rubin,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J. On exceptions. Respondent was tried on complaints charging him with operating a motor vehicle while intoxicated and reckless driving. The offenses, because they were based on the same facts, were tried together with consent of the respondent. The jury returned a verdict of guilty in each case. The cases are before this court on three exceptions:

Exception I concerns the admission of the testimony of a doctor and a chemist testifying as to the obtaining and analyzing of the blood of the respondent for the purpose of ascertaining its alcoholic content. The result of the blood test was admitted over the objection of the respondent.

Exception II attacks the admission of extra-judicial statements made by the respondent on the ground that the State had failed to prove the corpus delicti.

Exception III attacks the refusal of the presiding justice to direct a verdict of not guilty for the respondent in the case charging him with reckless driving.

The respondent on the night of September 4, 1959, at approximately 10:30 P. M., was operating his motor vehicle on Route 131 in the Town of St. George, traveling in the direction of Port Clyde. The respondent's car was a 1954 Ford, green in color. There was an accident to which there were no witnesses insofar as the actual circumstances immediately surrounding the accident were concerned. Three young people driving on the St. George Road, in the direction of Port Clyde, came upon the respondent's car which was on the left-hand side of the road, badly damaged, with

no occupant therein. The respondent was found in an unconscious condition lying in a ditch by a stone wall some distance from the edge of the highway and being approximately 50 or 60 feet from the Ford car. Some 390 feet ahead of the Ford was a sheriff's patrol car. This car was off the right-hand side of the road against a tree in the vicinity of the Reynold's property, so-called. The two deputy sheriffs occupying the sheriff patrol car were dead. The respondent was taken to the Knox County Memorial Hospital at Rockland in a state of apparent unconsciousness. While administering emergency treatment a medical doctor, at the request of a lieutenant of the Maine State Police, took a quantity of blood from the body of the respondent for the purpose of ascertaining its alcoholic content. An issue developed in the trial of the case charging the respondent with operating a motor vehicle while intoxicated, concerning whether the respondent was unconscious or in such a mental state that he could not have appreciated the significance of the act of withdrawing the blood from his person and, therefore, unable to consent.

Exception III goes to the denial of a motion for a directed verdict of not guilty as to the complaint charging reckless driving.

## EXCEPTION I

The respondent contends that the results of the blood test were not admissible for the following reasons: (1) That the respondent was unconscious when the sample of blood was taken from his person and, therefore, it was not done with his permission and consent; (2) that the circumstances under which the blood sample was taken were such that he was not given a reasonable opportunity to protect his rights; (3) that at the time the blood sample was taken the respondent was not under arrest and later, when he is alleged to have consented to the analysis of the blood, he

was not then charged with crime and, not having then been charged with crime, he was providing evidence against himself, thereby giving the State evidence upon which to prosecute; that a subsequent analysis of the blood which was made after the lapse of an appreciable length of time subsequent to the operation of the motor vehicle, would not have fairly indicated his condition of sobriety at the time of the operation of the car.

The statutory provision regarding blood tests in cases involving the operation of motor vehicles by operators suspected of being under the influence of intoxicating liquor is contained in Chap. 22, Sec. 150, R. S., 1954, as amended. That portion of the section pertinent to blood tests reads as follows:

"The court may admit evidence of the percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by a chemical analysis of his breath, blood or urine. Evidence that there was, at that time, $7/100\%$, or less, by weight of alcohol in his blood, is prima facie evidence that the defendant was not under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at that time, from $7/100\%$ to $15/100\%$ by weight of alcohol in his blood is relevant evidence but it is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this section. Evidence that there was, at the time, $15/100\%$, or more, by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section. - - - - The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

There is no question, according to the record, that the respondent was in such a mental condition that he was in-

capable of giving his permission to take a sample of his blood for the purpose of analysis. The blood sample was taken shortly after midnight. That same morning, at approximately eleven o'clock, two state troopers, the county attorney and the director of the hospital were present in the respondent's hospital room for the purpose of obtaining his permission to analyze the blood sample and to interrogate him as to his version of the accident. The jury on the evidence submitted would be justified in determining, at this point, that the respondent was conscious and fully aware of what he was saying. It was at this time that the respondent, after having been advised of his rights as to the analysis of the blood sample and the fact that the results could be used as evidence against him in court, consented to its analysis. We are not required to determine whether the taking of the respondent's blood from his body while he was unconscious or semiconscious was in violation of his constitutional rights because later when in full possession of his mental faculties, and after having been fully advised of his legal rights, he consented to the blood test and the use in court of its results.

The respondent, in contention, further says that the analysis of the blood sample was too remote from the time of the alleged operation of the motor vehicle that it would not fairly reflect the degree of sobriety of the respondent at the time of the accident. The blood sample was taken approximately 1¾ hours after the accident. In *Toms* v. *State,* 239 P. (2nd) 812 (Oklahoma), the court held that urine and breath tests taken at 5 P. M. following an accident which took place at 3:30 P. M. were not too remote in point of time to be inadmissible in evidence to show alcoholic content of the blood at the time of the accident. See also *Augusta* v. *Jensen, et al.,* 42 N. W. (2nd) 383 (Iowa) wherein there was a period of approximately one hour and twenty minutes involved which did not cause the results

of the tests to be inadmissible. Lapse of time between the taking of the blood sample and the consumption of the intoxicant works to the advantage of a respondent and not to his prejudice.

Counsel for the respondent argues that the respondent was not under arrest when the blood sample was taken, therefore it was error for the analysis to be admitted in evidence. It is true that the respondent at the time the blood sample was obtained was not under arrest nor was he accused of a criminal offense. No one could determine before the analysis whether the result would be favorable to the respondent or evidence against him. The respondent was involved in a motor vehicle accident of serious proportions and one of the results of the accident was the death of two men. It was incumbent upon the investigating officials to obtain all of the evidence available to determine whether a criminal prosecution was in order. It was important in the interests of a complete investigation to determine the condition of the respondent as to his sobriety. This, along with other evidence, would provide the information as to whether he should be vindicated or stand accused of a criminal offense. He was informed that a blood sample had been taken when he was admitted to the hospital; that if the sample was analyzed the result of the analysis could be used in court. He then agreed and consented to the analysis. There is no evidence that he was coerced, intimidated, threatened or in any other manner forced to consent. At the time of consenting he had the mental capacity to appreciate and realize the significance of what he was doing and a knowledge of possible consequences. The respondent was not held by virtue of legal process or in any other manner restrained of his liberty. His consent came from a mind free of any influence on the part of the investigators that would tend to destroy his freedom of

choice. See *Willennar* v. *State*, 91 N. E. (2nd) 178 (Indiana) ; *Hicks* v. *State*, 213 Ind. 277.

There is no merit in respondent's Exception I.

## EXCEPTION II

The second exception pertains to the admission in evidence of certain statements or admissions made by the respondent on September 5, 1959 while he was in the hospital. Counsel for the respondent claims the statements were inadmissible because there was no proof of the corpus delicti which is required before respondent's admissions are competent as evidence. It is important to note, that by agreement, the two criminal charges were tried together as they both were based on the same facts.

An officer, a witness for the State, testified that the respondent, while in the hospital, made the following statements:

"A.  Mr. Tripp stated that he was on his way to Port Clyde from Cushing, and that after he turned going up the hill, I believe Monticello was the word Mr. Tripp used, that is as you turn off Route 1, he first saw a red light flashing and that was the first that he knew of being pursued by officers.

Mr. PAYSON:  Did he say anything else?

A.  He stated that he had been drinking and that he took off at a fast rate of speed due to the fact he had been drinking. When questioned as to how fast, he stated a little later about sixty, and then stated just cruising.

Q.  Did he say anything about how the accident occurred?

A.  Yes.

- - - - - -

A.  He stated during the pursuit they had met two or three cars; had met one or two cars and

had passed I believe two or three cars, and stated that due to the speed he lost control of the vehicle and that was what caused the accident."

Corpus delicti is established if evidence, either circumstantial or direct, demonstrates the probability that a crime has been committed. *State* v. *Hoffses*, 147 Me. 221. The following facts, as disclosed by the record, sufficiently prove the corpus delicti. The respondent, at about 10:30 on the night of September 4th, was recognized by a witness as driving the automobile that was later involved in the accident. Approximately ten or fifteen minutes later a woman living on Route 131 was attracted to the passage of two automobiles on the highway headed in the direction of St. George. Her attention was drawn to the cars by the sound of a siren and in looking she saw two cars going quite fast and close together. The latter car was equipped with a blinker in operation. Three young people were in an automobile driving on Route 131 in the direction of Port Clyde when two cars passed them, the second one being the officers' car with the blinker. The estimated speed of the first car was 80-90 miles an hour. The young people continued along for about a mile and a half when they ran upon a badly damaged automobile sideways of the road on the left hand side. It had no occupant. In searching the premises nearby they found the respondent in an unconscious condition lying off the road about 50 or 60 feet from the location of the car. The respondent, on the afternoon of the accident, was using crutches. Crutches were found in the Ford car. The sheriffs' car was off the road on the right hand side toward Port Clyde about 390 feet from the Ford car. The respondent, according to the testimony, had consumed, at least, one bottle of beer in the afternoon and another about ten o'clock in the evening. The neck of a broken beer bottle, with the cap on, was found in the car and also an empty beer carton. After the accident a strong

odor of alcohol was detected on the respondent's breath. The blood test showed .238 per cent by weight of ethyl alcohol. The circumstantial evidence of such a convincing nature establishes the corpus delicti. The facts in the instant case bear much similarity to those obtaining in *State* v. *Hoffses, supra,* which held that the corpus delicti was amply proven. The admission of the extra-judicial statements of the respondent was not error.

### EXCEPTION III

This exception attacks the refusal of the presiding justice to direct a verdict of not guilty on the charge of reckless driving. A careful review of the record discloses that the presiding justice was not in error when he denied the motion for a directed verdict of not guilty on the reckless driving charge.

Exception III is overruled.

*Exceptions overruled.*

*Judgment for the State in each case.*