STATE OF MAINE
*vs.*
LEROY W. MERROW

Somerset.    Opinion, April 12, 1965

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, MARDEN, JJ. WEBBER, J., concurring opinion. SIDDALL, J., sat, but retired before rendition of decision.

*Clinton B. Townsend, County Attorney for Somerset County,* for State.

*Carl R. Wright, Esq.,* for Defendant.

TAPLEY, J. On exceptions. The defendant, Leroy W. Merrow, was charged by complaint with the crime of operating a motor vehicle while under the influence of intoxicating liquor. The case was tried before a drawn jury at the September Term, 1963, of the Superior Court, within and for the County of Somerset and State of Maine. The jury returned a verdict of guilty, whereupon the defendant was sentenced. Counsel for the defendant seasonably filed exceptions.

The legal issues in the case arise out of the circumstances involved in the withdrawal of a blood sample from the person of the defendant and the result of the analysis of the sample being submitted to the jury for a determination of its evidentiary value.

The defendant takes exceptions to the admission of the analysis of the blood sample for the reasons: (1) that the defendant was not mentally capable of understanding and realizing the effect of his consent to the withdrawal of the blood sample; (2) that he was unable to comprehend the possible consequences of his consent; and (3) that his mental condition was such he was unable to knowingly give his consent. He further contends that he was denied due process as guaranteed by the Constitution of the United States and of the State of Maine; that his constitutional rights were further violated as to an unlawful search and seizure and by using the result of the analysis of the blood taken

from his body his constitutional rights against self incrimination were violated.

Counsel for the defendant contends that the alleged violation of his client's constitutional rights are questions of law to be decided by the court and not questions of fact to be resolved by the jury and when the presiding justice submitted these constitutional questions to the jury he committed an error prejudicial to the defendant.

The defendant, Mr. Merrow, on July 3, 1963, was operating a truck on and along Route 8 in Smithfield, Maine and while operating said truck it collided with another motor vehicle, left the road and went into a pasture. Both the defendant and his wife, who was a passenger in the truck, were rendered unconscious as a result of the collision. Mr. Merrow regained consciousness at the scene and was later transported by ambulance to the Fairview Hospital in Skowhegan. At the hospital a State Police Officer stated to him "that a blood test would be taken by his permission and it would be used in court." According to the officer's testimony Mr. Merrow said "he would take a blood test, that he had nothing to lose by taking it." After this conversation the physician in attendance upon Mr. Merrow, one Dr. Kemezys, extracted a quantity of blood from Mr. Merrow's arm.

The crux of the defendant's case is, according to his contention, that he was incapable of consenting to the extraction of blood from his body and thereby his constitutional rights were violated, which raised an issue of law for the court and not one of fact for the jury.

The statutory law involved pertaining to the use of blood tests in prosecutions for operating a motor vehicle while under the influence of intoxicating liquor is found in Sec. 150, Chap. 22, R. S., 1954 (29 M.R.S.A., Sec. 1312). It reads in part:

> "The court may admit evidence of the percentage by weight of alcohol in the defendant's blood at the time alleged, as shown by a chemical analysis of his breath, blood or urine - - - - . The failure of a person accused of this offense to have tests made to determine the weight of alcohol in his blood shall not be admissible in evidence against him."

The defendant contends that at the time the blood was extracted from his body he was incapable of consenting and, therefore, the extraction of blood was in violation of his constitutional rights in that he was compelled to give evidence against himself and, further, that the extraction amounted to an unlawful search and seizure. He says the act was in violation of the Fourth and Fifth Amendments to the Constitution of the United States. In substance, he argues that the evidence in the form of the blood analysis was illegally obtained and, therefore, inadmissible.

The statute does not expressly state that a blood analysis, to be admissible, must be of blood extracted with consent of the defendant. However, there are strong and compelling statutory implications that consent is required. Under the statute the defendant has a choice (1) he may refuse a blood test, and this refusal is not to be used against him; or (2) he may desire to have the test made. We neither intimate nor suggest what our holding might be in a case involving the testing of blood not physically extracted from a respondent's body.

With reference to the expressed terms of the statute, we said:

> "The statute itself establishes no rights as to the making of the tests and imposes no obligations on the part of either arresting officers or the respondent." *State* v. *Munsey*, 152 Me. 198, 200.

In the case at bar the defendant makes the claim that his consent to the extraction of blood from his body was not

given voluntarily as he was not mentally capable of understanding and realizing the effect of his consent. This contention puts in issue the question of *voluntary* consent. Under the circumstances of this case the voluntariness of a confession and the rules of trial procedure pertaining to the finding of the element of voluntariness are analogous to the question of voluntary consent in cases prosecuted under the statute prohibiting the operation of motor vehicles while intoxicated.

The question of whether a confession was voluntary or involuntary arose in *Jackson, Petitioner* v. *Denno, Warden,* 378 U. S. 368, 12 L.Ed. (2nd) 908, 84 S. Ct. 1774. Jackson claimed his will "was affected by the drugs administered to him" while the State's evidence was that the drugs did not affect him at all. Jackson was tried under the New York practice where the involuntariness of a confession is submitted to the jury for factual determination along with instructions that if the confession was found to be involuntary, it was to be disregarded. The court did not accept the New York procedure but, in effect, gave approval to the Massachusetts rule. In Massachusetts the judge hears the evidence surrounding the obtaining of the confession, resolves evidentiary conflicts and makes his own judgment as to the question of voluntariness. If he deems the confession to be involuntary he rules it inadmissible. If he finds the confession to be voluntary, it is admitted. The jury then may determine the factual issue of voluntariness separately and distinctly from the finding of the court. If the jury finds the confession voluntary it then considers its probative effect on the case. We approve of this procedure.

In the recent case of *Commonwealth* v. *Maroney,* 206 A. (2nd) 379 (Pa.) (1965), the court had occasion to concern itself with an issue involving a confession claimed to have been involuntarily given because the petitioner, being under the oppressive effect of the withdrawal treatment of

narcotic addiction had made the confession in an attempt to obtain drugs. The trial court submitted the question of voluntariness to the jury without first making an independent determination of voluntariness. The court held that submitting the question of voluntariness of a confession to a jury without first conducting a preliminary hearing before the trial judge as to whether the confession was voluntary or involuntary was error.

It has been the rule in Maine for a substantial number of years to require a prior determination by the presiding justice of circumstances surrounding the giving of a confession in order to determine its voluntariness before submitting it to the jury. In such cases the jury is instructed to determine if the confession was given with a free will and if so, what probative force it has on the merits of the case as to the guilt or innocence of the defendant.

> " - - - - the question whether a particular confession offered in evidence was voluntary or was obtained by constraint or coercion - - - - is not a question of law. It is to be determined by evidence. The evidence upon this issue may be conflicting and confused. Even when the evidence is uncontradicted, different inferences may often be drawn from it by different men and each inference be logically possible. Hence, the question must be determined by the presiding justice as a question of fact. - - - -

> " - - - if the presiding justice does err in his finding of fact and admits the confession in evidence - - - - the respondent can then appeal to the jury to exclude it from consideration as improperly obtained, and can show all the circumstances tending to destroy or weaken its probative power. He can also require the presiding justice to instruct the jury it should not give credit to the confession if thus improperly obtained.

> " - - - - in the absence of evidence all confessions are presumed to be voluntary, and the burden is

on the respondent to rebut that presumption by evidence - - - - ." *State* v. *Grover*, 96 Me. 363, 365, 366, 368 (1902).

See *State* v. *O'Donnell, et al.*, 131 Me. 294 and *State* v. *Robbins, et al.*, 135 Me. 121.

We hold that the rule established in *State* v. *Grover, supra,* relative to the trial procedure involving the consideration of confessions, is applicable and shall apply to the issue of consent as an element in the prosecution of a defendant charged with the operation of a motor vehicle while intoxicated when consent is claimed by the defendant to have been involuntary. We now apply the approved procedure to the circumstances of the instant case as reflected by the record.

There is a substantial and vital issue raised by counsel for the defendant as to whether voluntary consent was given by the defendant to extract blood from his body for the purpose of analysis. The evidence discloses on the side of the defendant that he was mentally incapable of freely giving his consent and of appreciating the consequences thereof, while the State, on the other hand, produced evidence showing mental capability and an appreciation of the quality of his act and possible consequences, thus a question of fact was raised as to whether consent came from a mind capable of giving consent.

The only issue raised by the exceptions is that of consent.

"(a) that said Respondent was not then mentally capable of understanding and realizing the effect of his consent,

"(b) that at the time of the alleged consent, the Respondent did not have the mental capacity to appreciate and realize the significance of what he was doing and a knowledge of the possible consequences; ·

> "(c) and that the Respondent did not have sufficient possession of his mental processes to be able to knowingly give his consent thereto."

During the course of the trial there was an objection made by defense counsel to a question propounded by State's attorney relative to an alleged admission or statement purported to have been made by the respondent. Following this objection a preliminary hearing was held before the court in the absence of. the jury for the purpose of determining whether the admission or statement were voluntary. The court, after the preliminary hearing, overruled the objection, allowed the question and other pertinent questions involving the same subject matter to be answered. When the court charged the jury he instructed them that they were to determine as a factual matter whether the admissions or confessions were voluntary and if they were found to be so, the jury was to give them such weight and credence as their judgment dictated. He also said, in reference to the admissions or confessions: "Again I will say: the fact that the court has ruled that the minimum requirements of the law have been met does not constitute a finding that you the jury must give any weight whatsoever to the finding."

Although questions involving admissions or confessions are not before us for determination, it becomes necessary for us to consider the manner in which the presiding justice dealt with them in order to properly understand and clarify the court's charge to the jury as to those instructions pertaining to consent. Counsel for the defendant claimed the consent was not voluntary, whereupon the presiding justice conducted a preliminary hearing as to the circumstances surrounding the obtaining of consent to the extraction of blood from the person of the defendant. After the completion of the testimony the court made this statement: "Then when the jury returns I will overrule

the objection to the pending question and your rights are saved. You may state for the record the basis of your objection if you wish. At the appropriate time I will give the jury detailed instructions concerning due process." With this language the presiding justice determined that the question of consent should be submitted to the jury with "detailed instructions concerning due process." He later referred to the issue of consent: " - - - - the question of due process is one of fact which ought to be submitted to the jury under proper instructions, and I determine that is the law of Maine. That being so, in view of the state of the evidence in this case a jury question arises as to whether or not there was a consent given by this particular respondent in and under such circumstances that he was capable of judgment." The presiding justice in his charge to the jury instructed them on the issue of consent as follows:

"Now in the event you find in this particular case that the State has established beyond a reasonable doubt, first, that he was driving, and, secondly, that while he was driving he was under the influence of intoxicating liquor, you have a very serious problem then to discuss and decide.

"The claim in this case is — and it is affirmatively made by the respondent — that in its conduct the State has denied him, the respondent, the due process of law which is guaranteed by various provisions of the Constitution of the United States and the Constitution of the State of Maine. I instruct you as a matter of law that if you find it affirmatively established that evidence was taken from this respondent, that is specifically that a blood sample was taken from his body at a time when he was unconscious or incapable of exercising reasoning processes by reason of physical injury resulting from the accident — I do not recall that there is any other evidence of physical injury, and that is why I say 'physical injury re-

sulting from the accident — and that such evidence was thereafter knowingly used by the State against the respondent, that there would thereby result a denial of the due process of the law that is guaranteed to all persons.' "

The presiding justice did not make a finding of fact on the issue of voluntariness.

"Whether in a given case the alleged confession is voluntary or involuntary is a question of fact to be determined by the presiding Justice upon evidence offerable by both sides, *and his ruling upon that preliminary point can be reversed by the Law Court only when the court can find as a matter of law that the confession was involuntary in the legal sense.* His finding has the force of the verdict of a jury and is allowed to stand unless the contrary inference is held to be the only reasonable one." (Emphasis supplied.) *State* v. *Priest,* 117 Me. 223, 228, 229.

See *State* v. *Grover, supra.* Where the decision of the presiding justice on the preliminary hearing is subject to review, a finding of fact must be made in order to provide a ruling from which an appeal may be taken.

A careful review of the record leaves us to conclude that there was error in not making a finding of fact as a result of the preliminary hearing.

Questions arose as to the application of the principles in *State* v. *Munsey,* 152 Me. 198; *State v. Couture,* 156 Me. 231 and *State* v. *Tripp,* 158 Me. 161 relative to rule of submitting issues of due process to the jury for factual determination. These cases are not pertinent or controlling in the instant case. Factually, they are distinguishable from the instant case.

In *Munsey, supra,* there were no facts in dispute respecting the alleged deprivation of reasonable opportunity to secure a blood test; *Couture, supra,* held that *where no facts*

*were in dispute* the issue of violation of constitutional rights was one of law to be determined by the court; in *Tripp, supra,* the issue as to whether or not the trial judge should have passed on the voluntariness of consent was not raised.

In summary, it is to be noted that in all cases involving questionable consent the court must (1) determine at a preliminary hearing, without the presence of the jury, the issue of voluntary consent; (2) if the court finds and formally rules the consent was involuntary the evidence should not be admitted; and (3) if the court finds the consent was voluntary then the question is submitted to the jury with instructions that they may first determine its voluntariness and if they so find, then to accept it, giving to it such weight, credibility and probative force as they may determine.

The entry shall be:

*Exceptions sustained.*

WEBBER, J. (CONCURRING)

I concur in the result. I would add only a comment as to the rationale which underlies the rule pertaining to confessions. *Jackson* v. *Denno,* 378 U. S. 368, 12 L.Ed. (2nd) 908; 84 S. Ct. 1774, cited and discussed in the opinion of the court, not only makes it clear that the procedure long followed in Maine meets all constitutional requirements but also indicates why preliminary findings by the court are deemed necessary. A jury, satisfied that a confession is factual and truthful and leaves no doubt as to the guilt of the respondent, might find it difficult to make an impartial and objective assessment of its voluntariness. The Supreme

Court was of opinion that a presiding justice, trained and experienced in the difficult art of rejecting even the most convincing evidence if it be improperly obtained, would be better able to make that unemotional evaluation of the voluntariness of the confession which justice requires. Like considerations prompt the use of similar procedure when the issue is the voluntariness of consent to the making of a blood test which may be used against a criminal respondent. Where, as in the instant case, there is no doubt that the blood tested was the respondent's and the test clearly demonstrates that he must have been intoxicated at the time of his allegedly unlawful operation of a motor vehicle, there is a demonstrable hazard that a jury might not be disposed to examine too closely the circumstances under which purported consent was obtained. It is natural and instinctive for the layman serving as juror to go directly to the heart of the matter which is guilt or innocence. He has not been schooled by legal training to concern himself with the methods by which guilt is shown. He tends understandably to resist the concept that the man who is obviously guilty must nevertheless go free unless his guilt can be demonstrated by legally admissible evidence lawfully obtained. It is reasonable to hope and believe that one trained in the law and fortified by judicial experience can more readily insulate his mind from the near certainty of guilt and make a dispassionate judgment as to the methods by which blood test evidence was obtained. In the instant case the justice below expressly declined to make a preliminary factual determination as to the existence or nonexistence of voluntary consent to the making of the test. The respondent has consistently and inaccurately referred to this issue as one of law for the court. It is rather one of fact which must first be determined by the court before being submitted to the jury. I agree with the conclusion of the court that the exceptions must be sustained and the case tried anew.