**STATE of Maine**

**v.**

**Olin A. HURD.**

Supreme Judicial Court of Maine.

March 13, 1972.

Chadbourn H. Smith, John R. Atwood, Asst. Attys. Gen., Augusta, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

ARCHIBALD, Justice.

On appeal. Appellant, an indigent represented by Court appointed counsel, was tried and convicted of murder. Court appointed counsel, other than trial counsel, represented him on appeal. His points on appeal,[1] although not waived, have not been briefed, with the exception of one: ineffective assistance of counsel. However, we have reviewed the record in its entirety and will deal with them in the order raised. For comprehension of their significance a summary of the ultimate facts is appropriate.

In the early morning hours of Sunday, July 2, 1967, Harold G. Hurd (the deceased) was found fully dressed lying on the ground outside a camp near Route 4 in Madrid. He was dead. His death was caused by a bullet from a .308 Winchester rifle fired at a distance of approximately one hundred feet from the opposite side of the highway.

On the preceding Friday the deceased and the defendant, brothers, had come to Madrid from Massachusetts to visit another brother, Carl Hurd, who arranged for their occupancy of a nearby camp. The defendant spent Saturday visiting Carl Hurd and a friend, William Armstrong. Mr. Armstrong owned the .308 Winchester rifle. During this visit the defendant used the rifle to shoot at a target, and knew where it was kept. The defendant left the Armstrong house around midnight and spent the next three hours talking with Carl, leaving Carl's camp at 3:30 a. m.

At approximately 4:00 a. m. the defendant, dressed only in shorts, reappeared at Carl's camp with a bleeding hand. He reported that the deceased had struck and cut him with a glass lamp. The defendant with his brother returned to the nearby camp and confronted the deceased, who denied any assault on the defendant, saying, "I didn't hit nobody." The interview was terminated when the deceased stated: "If you two guys don't get out of here, I'll shoot the both of you."

Following this conversation and after the defendant had dressed, Carl Hurd returned to his camp. Less than an hour later Carl heard a shot fired, following which the defendant appeared and stated, "I just shot him." Carl Hurd reported the events to the police. An intensive investigation was begun, leading to the arrest of the defendant for the crime of murder.

Both Mr. Armstrong and Carl Hurd were asked to describe the defendant's condition

1. "The issues on appeal are as follows:
    1. The verdict is contrary to the weight of the evidence.
    2. The verdict is not supported by substantial evidence.
    3. The Court erred in denying Defendant's Motion for New Trial at the conclusion of the trial.
    4. The Court erred in not instructing Defendant as to his rights of appeal and appointment of counsel and procuring of a record as required under Rule 37(c).
    5. The Court erred in allowing the confession of Defendant to be admitted in evidence without a Jackson v. Denno hearing.
    6. The Court erred in allowing the confession of Defendant to be admitted in violation of the 5th amendment of the Constitution and the Miranda ruling.
    7. The Court erred in not properly and adequeately [sic] voir diring the jury in a murder case.
    8. The Court erred in allowing the opinion of the ballistic expert.
    9. The Court erred in allowing the opinion of the pathologist as to cause of death.
    10. The Court erred in not giving an instruction to the jury as to inoxication and the existence of passion and anger as allowed in State vs. Arsenault.
    11. That Defendant was generally deprived of effective assistance of counsel."

with reference to the use of alcohol. Although there had been evidence of some drinking, there was no evidence to indicate that the defendant was intoxicated. When he was interviewed at approximately 8:30 that morning by a State police detective, he was described as sober.

During the course of the trial a State police detective described an interview which he had with the defendant in which the defendant is quoted as having admitted the shooting. The admissibility of this evidence will be considered at a later time.

The defendant testified that, after being assaulted and cut with the lamp, he went back to the Armstrong home, obtained the rifle, returned, and stationed himself across the road from the camp. He further testified that his brother came out of the camp and walked in the direction of an automobile, in the trunk of which the defendant knew there was a gun. The record discloses this testimony:

"Q  Well, what happened then?

A  Well, it's kind of hazy what happened then, but I suppose I shot him.

Q  And then what did you do?

A  Dropped the gun, was sick to my stomach a couple of times, vomitted, and then I went down to brother Carl's."

### Points 1 and 2

■  We consider these points together. The jury had ample evidence before it to conclude beyond a reasonable doubt that the defendant's act was the cause of the death of Harold G. Hurd; that this act was the deliberate aiming and firing of a high powered rifle at the decedent from a distance of over one hundred feet; that the decedent at that time posed no threat to the defendant's life, nor was the defendant in imminent danger of serious bodily harm. The verdict was not contrary to

the weight of the evidence and was supported by substantial evidence. "The verdict could not have been otherwise." State v. Turmel (1952), 148 Me. 1, 8, 88 A.2d 367, 370.

### Point 3

The defendant, after the verdict, filed a motion for a new trial pursuant to M.R. Crim.P., Rule 33, which states: "The court on motion of the defendant may grant a new trial to him if required in the interest of justice."

This motion was premised on the failure of defendant's counsel to inquire of him as to his "state of mind" at the time of the homicidal act. It was urged that such evidence might have resulted in a manslaughter verdict. The Justice who presided at the trial concluded: "The jury had ample testimony in which it could make a finding upon the issue of 'whether or not he (defendant) was angry or in a state of passion at any relevant times.'" In denying the motion he stated:

"While this motion does not come technically within Rule 33 it has been considered in the light of affording to this defendant an examination of the claims made herein in the interest of justice . . . ."

■  The Justice below undoubtedly gave consideration to the scope of such motions not based on newly discovered evidence. The rule is clearly set forth in State v. Ladd (1963), 159 Me. 431, 432, 193 A.2d 914, in this language:

"The only question raised by appeal from the denial of a motion for a new trial in a criminal case is whether, in view of all the testimony, the jury was justified in believing beyond a reasonable doubt that the respondent was guilty . . . ."

This motion did not fall within any of the recognized exceptions. *See* Glassman,

Maine Practice, Rules of Criminal Procedure, § 33.3. The consideration given this motion resulted in no injustice to the defendant.

### Point 4

The trial judge failed to instruct appellant of his right to appeal as provided for in M.R.Crim.P., Rule 37(c).

■ This question is now moot because the right to appeal was exercised and, although once lost, was reinstated by order of the Court, under which counsel was also appointed. *See* Boyd v. State (Me. 1971), 282 A.2d 169.

### Points 5 and 6

The Court erred in allowing defendant's confession into evidence without a "Jackson v. Denno" hearing in violation of the Fifth Amendment of the Constitution (Jackson v. Denno (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908), and in violation of the "Miranda" rule (Miranda v. State of Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694).

The record indicates that State Police Detective Lawrence J. Vigue testified that the defendant had confessed shooting his brother. Preliminarily, Detective Vigue had testified that he read to the defendant the so-called "Miranda" warnings. At this point, and on request of defense counsel, the jury was excused. Hearing was then held subject to full cross-examination during which Detective Vigue recounted exactly what warnings were given and his impression of the defendant's comprehension of them. At the conclusion of the interrogation defense counsel objected to the admissibility of any statement that the defendant may have made. The basis of his objection was that there was no evidence that the defendant comprehended the explanation of these rights by the officer.

At the conclusion of this preliminary hearing, the Justice below ruled that any statement the defendant made was voluntary and that he understandably and intelligently waived his right to remain silent. He concluded with this statement:

> "[T]hat the jury must find this, too. But I make a preliminary finding, not to require my telling the jury that I made such a finding. But they must be advised that they must make such a finding also."

The jury was then recalled and Detective Vigue repeated the testimony given before the Justice, was cross-examined thereon and then repeated to the jury the incriminating statement of the defendant admitting responsibility for shooting and killing his brother. Defense counsel seasonably objected.

In State v. Merrow (1965), 161 Me. 111, 121, 208 A.2d 659, 664, our Court, having in mind the mandate in Jackson v. Denno, *supra*, established this rule:

> "In summary, it is to be noted that in all cases involving questionable consent the Court must (1) determine at a preliminary hearing, without the presence of the jury, the issue of voluntary consent; (2) if the Court finds and formally rules the consent was involuntary the evidence should not be admitted; and (3) if the Court finds the consent was voluntary then the question is submitted to the jury with instructions that they may first determine its voluntariness and if they so find, then to accept it, giving to it such weight, credibility and probative force as they may determine."

■ We have read the charge to the jury and it is abundantly clear that the Justice below fully complied with the mandate in *Merrow*. The record also indicates that he submitted special interrogatories to the jury, as a result of which the jury found that the defendant had made a confession "after a waiver of his rights." The record is clear that the defendant's confession was properly admitted in evidence and submitted to the jury under appropriate instructions as to the weight to

be given it if the jury should find that the defendant's constitutional rights had been violated.

### Point 7

M.R.Crim.P., Rule 24(a) provides:

"The parties or their attorneys may conduct the examination of the prospective jurors unless the court elects to conduct an initial examination itself."

Appellant claims that only preliminary and scanty questions were asked the prospective jurors originally summoned and that even less was asked of those later summoned. Further, he claims that because of the pre-trial publicity, a more extensive voir dire should have been conducted.

Each of the prospective jurors, except two, had submitted answers to the required jury questionnaire,[2] which provides background information on each juror. Defense counsel had availed himself of these prior to the voir dire examination. At the request of defense counsel, the Court made additional inquiry of the two jurors who had not submitted questionnaires. There is no evidence that defense counsel was not afforded an opportunity to expand the voir dire examination of any prospective juror if thought necessary. Both the State and defendant exercised numerous challenges, some of which obviously resulted from an advance reading of the questionnaires, and both agreed on the final panel being "satisfactory."

■ There is not the slightest suggestion that the Justice below exceeded the discretion given him by Rule 24(a). There was no error in the manner in which the voir dire examination was conducted.

### Points 8 and 9

The Court erred in allowing the opinions of a ballistics expert and a pathologist.

■■ In the absence of an error of law qualification of an expert and admission of his opinions are questions for the Court. Gosselin v. Better Homes, Inc. (Me.1969), 256 A.2d 629; Parker v. Hohman (Me. 1969), 250 A.2d 698. Appellant alleges that the ballistics expert was not qualified to give an opinion based upon his limited academic training. The Court found the expert to have had sufficient training for the purposes of the opinions given. The expert testified he had given his opinion approximately two hundred times in courts in this and other states. There was no error of law committed in admitting the opinion of the ballistics expert.

■ Because no objection was made to the opinion of the pathologist, appellant has not preserved that point of appeal. *See* M.R.Crim.P., Rule 51. However, the testimony is clear that the doctor has outstanding credentials in the field of pathology.

### Point 10

■ A. An instruction relating to the effect of intoxication was not required from the facts. The evidence failed to suggest that the appellant was intoxicated at the time of the shooting. *See* State v. Mosley (1934), 133 Me. 168, 171–172, 175 A. 307, 308.

■ B. During his instructions to the jury the Justice below carefully and correctly explained the elements of manslaughter. He elaborated on the legal meaning of the expression "being in the heat of passion," as used in our manslaughter statute. 17 M.R.S.A. § 2551. The appellant has no cause to complain, particularly in view of our recent holding in State v. Wilbur (Me.1971), 278 A.2d 139, placing on

2. "The jury commissioners shall send to each person selected a jury questionnaire, which questionnaire, when returned by the prospective jurors, shall be deposited with the clerks of courts for their respective counties and shall at all times during business hours be open to inspection by the court and attorneys of record of the State of Maine." 14 M.R.S.A. § 1254.

the defendant the burden of persuasion to prove heat of passion by a fair preponderance of all of the evidence once a felonious homicide has been established beyond a reasonable doubt.

### Point 11

■ We have repeatedly held that a habeas corpus post-conviction proceeding is the proper method to raise the issue of competency of trial counsel. From the record we cannot say that trial counsel was inadequate. It does not depict any ignorance of legal principles, lack of diligence or substantial error. The trial was not a mere farce or sham, nor was the effort of counsel perfunctory only. State v. Pullen (Me. 1970), 266 A.2d 222.

The entry will be

Appeal denied.

All Justices concur.