Mario Pittoni, J.
The plaintiffs have brought this action to foreclose two mortgages, one for $2,000, and the other for $1,000, which have been consolidated into a single mortgage of $3,000. The defendant Suozzi has interposed three defenses: the Statute of Limitations, payment, and an oral agreement of settlement. The defense of settlement is now without merit since the Surrogate’s order approving the settlement has been vacated.
On February 13, 1946 defendant Capobianco gave a $2,000 mortgage to the First National Bank of Glen Head, and on June 25, 1946 this mortgage was assigned to Mildred L. Kuehn. On July 2, 1946 Capobianco gave Mildred L. Kuehn a mortgage for $1,000. This second mortgage contained a provision consolidating it with the $2,000 mortgage; it effected a consolidated $3,000 mortgage payable in monthly installments of $31.83, beginning August 1, 1946 and continuing until July 1, 1956.
Mildred L. Kuehn died on March 6, 1950, and on June 14, 1951 the administrator of her estate assigned the consolidated mortgage to Francis A. Ludlam. On July 1, 1951 Ludlam died, and the plaintiffs are the executors of his will.
The complaint alleges that no payment of principal or interest was made on the mortgages from their inception in 1946 to the *784 date of commencement of this foreclosure action in September, 1958. However, the plaintiffs admit, and Ludlam’s records disclose, that he had been collecting the rents from the mortgaged premises and applying them to the payment of the mortgage since December, 1948.
The plaintiffs claim that during a conversation held on November 29,1951, over eight years before this trial, Capobianco indicated that there had been no previous agreement with the deceased Ludlam as to how the rents were to be applied, and that Capobianco agreed that thereafter the collected rents were to be applied to an open account instead of to the mortgage, as Ludlam had previously done. The plaintiffs, however, have failed to sustain their burden of proof on this issue. For one thing, Capobianco emphatically denied such an agreement. It may be that one of the plaintiffs did make such statements at the conference. However, it does not appear that this unlearned man, Capobianco, understood it that way. Then too, this testimony is based on the recollection of an occurrence over eight years ago, and it was never recorded or put in any writing, as a careful lawyer would have done. Furthermore, before his death, Ludlam had definitely applied the rents he collected from the property to the mortgage payments. He did this even though Capobianco owed him a great deal of money on many other matters. Also, the plaintiffs failed to call as witnesses plaintiff Bertha Uhlendorf, an executrix, and Mrs. Schoelles, another interested person, who, according to the testimony, were present at this November 29, 1951 conference. Thus, the plaintiffs’ failure to call these other two persons warrants a construction of the evidence on this issue most strongly against the plaintiffs. (Noce v. Kaufman, 2 N Y 2d 347, 353; Robinson v. City of New York, 5 A D 2d 197, 199; Raimondo v. Fairchester Bakers, 265 App. Div. 861 [2d Dept.]; Borman v. Phipps Estates, 260 App. Div. 657; Milio v. Railway Motor Trucking Co., 257 App. Div. 640; Perlman v. Shanck, 192 App. Div. 179, 183; Richardson, Evidence [8th ed.], § 92, p. 66.) Therefore, the court fails to find that such an agreement, as contended by the plaintiffs, was entered into on November 29,1951.
On January 30, 1952 Capobianco conveyed the mortgaged premises to Suozzi, who neither assumed nor took the conveyance subject to the mortgage. Defendant Suozzi testified that when he took the conveyance from Capobianco he had been told that Ludlam had been collecting the rents from the property and applying them in reduction of the mortgage. Be that as it may, the alleged agreement between the executors and Capobianco on November 29,1951, as to the way the collected rents were to *785 be used, would not be binding on Suozzi; there was no notice to him or any consent by him, and there was no writing or any other record to bind him.
Then too, the burden of proof was on the plaintiffs to prove nonpayment on the mortgage. While the burden of proof is generally upon the defendant to prove payment, the rule is different where the plaintiff seeks to enforce a lien and nonpayment of the amount secured is part of the cause of action; the burden of proof is then upon the plaintiff to prove nonpayment (Conkling v. Weatherwax, 181 N. Y. 258, 268; Richardson, Evidence [8th ed.], § 103). In the Conhling case the court said, ‘ ‘ When the action is not upon contract by the payment of money, but is upon an obligation created by operation of law, or is for the enforcement of a lien where non-payment of the amount secured is part of the cause of action, it is necessary both to allege and prove the fact of non-payment.” And, in Richardson on Evidence, it is stated, “A typical illustration of the application of this third rule is found in a mortgage foreclosure action” (pp. 80-81).
Thereafter, sometime in September, 1952, the plaintiffs brought an action against Suozzi and Capobianco, asserting that Capobianco was indebted to the estate and that the conveyance by Capobianco of the mortgaged premises and four other parcels of real property to Suozzi were fraudulent conveyances. The complaint in that action sought a money judgment against Capobianco and a judgment setting aside the conveyance by Capobianco to Suozzi. On October 21, 1953 Suozzi and the executors signed an agreement providing for a settlement of the action against Suozzi. Among other things, this agreement stated that Suozzi would convey certain parcels, including the one now in issue, to himself and the executors, as trustees, upon various conditions, among which was the following:
“ 7. The parties hereto recognize the existence of a mortgage of $3,000.00 now in prior lien on the premises described as parcel 5 in the Complaint. The parties agree that the income from said premises shall be collected and received by the Executors and be applied as follows:
“ Firstly the payment of taxes, insurance premiums, and other upkeep and maintenance charges; and the balance to the indebtedness due from Capobianco to the Estate.”
The plaintiffs claim that this paragraph “ 7 ” revived or extended the operation of the Statute of Limitations under the provisions of sections 47-a and 59 of the Civil Practice Act. *786 This is not so. The recital in paragraph “ 7 ” merely gave the plaintiffs permission to collect rents; it was not an acknowledgment of any debt by defendant Suozzi so as to extend the Statute of Limitations pursuant to section .59 of the Civil Practice Act. The agreement was not a recognition by defendant Suozzi of an existing debt, and it was not consistent with a promise to pay by him. The agreement was made in consideration of settlement of the action against Suozzi in respect to four parcels and the subject premises. It provided for a sharing of proceeds from the parcels between defendant Suozzi and the plaintiffs in satisfaction of their claims again Capobianco. Among other things, clause 10 provided that after all claims were paid, Suozzi would get the surplus; or if the title were still as provided in the agreement, there would be a reconveyance to Suozzi. Clause 13 gave Suozzi the right to pay the indebtedness of Capobianco and get a reconveyance. Clause 14 stated that after payment to the estate, profits from the sale inured to Suozzi’s benefit. Clause 15 provided for general releases upon compliance with this agreement. All these clauses fail to indicate any intention on the part of Suozzi to pay the mortgage debt and they are completely inconsistent with any such intention.
Cases such as Manchester v. Braedner (107 N. Y. 346); Connecticut Trust & Safe Deposit Co. v. Wead (172 N. Y. 497); Curtiss-Wright Corp. v. Intercontinent Corp. (277 App. Div. 13); Matter of Meyrowits (114 N. Y. S. 2d 541, afifd. 284 App. Div. 801); Woolley v. Hoffman (99 N. Y. S. 2d 293); and Wright v. Parmenter (23 Misc. 629), cited by the plaintiffs, hold that an acknowledgment must recognize an existing debt and must contain nothing inconsistent with an intention by the debtor to pay it. They do not help the plaintiffs. However, Shohfi v. Shohfi (303 N. Y. 370) and Mintz v. Greenberg (5 A D 2d 774, affd. 5 N Y 2d 909) are more analogous to this case. In the Shohfi case a conveyance made “ subject to the mortgage ” thereon was held not to amount to an admission of the validity and lien of the mortgage; and the provision did not interrupt the running of the Statute of Limitations. In the Mints case a conveyance “ subject to all tax liens, unpaid taxes, assessments and encumbrances of record ” was not an acknowledgment under which the grantee intended to become personally liable.
It was conceded by the plaintiffs that the deceased Ludlam had been applying the collected rents to the mortgage since December, 1948, more than two and a half years prior to the assignment of the mortgage to him. His records show that he thus applied $1,595. Ludlam died 17 days after the mortgage was assigned to him, and his records also show that during this *787 period he applied $55 in collected rent to the mortgage. Prior to the conveyance by Capobianco to Suozzi, the plaintiffs collected $330 in rents, making a total of $1,980 collected before this conveyance. Further collections of $1,210 were made prior to the agreement of October 21, 1953, making a total of $3,190 of rents that should be applied as payment on the mortgage.
However, there are still due and owing on the mortgage approximately 19 more installment payments between the October 21, 1953 agreement and July 1, 1956, the last payment date under the consolidated mortgage. For one thing, defendant Suozzi himself clearly recognized the mortgage in the October 23, 1953 document, and consented therein to have the collected rents used by the executors for purposes other than for mortgage payments. Furthermore, this period is completely within six years of the commencement of the action.
Defendant Suozzi contends, however, that the Statute of Limitations bars foreclosure because the whole of the principal was due upon default of the first payment of principal and interest on August 1, 1946 and because the action was not commenced until September, 1958. This contention is based upon a provision in the consolidated mortgage which states that in the event of a foreclosure all the terms and conditions of the first mortgage shall govern. It is there provided as follows: “ That the whole of said principal sum shall become due after default in the payment of any installment of principal, or of interest for 30 days ”. This is the exact language provided for in the statutory form of mortgage (Real Property Law, § 258, schedule M). Subdivision 2 of section 254 of the Real Property Law construes the language as meaning that upon default in the payment of installment of principal or interest for 30 days, the principal sum with all interest arrearage shall, at the option of the mortgagee, become due and payable immediately. In Seligman v. Burg (233 App. Div. 221, 224, [2d Dept.]) the court said: “That section requires such language to be construed as requiring the obligee to exercise the option to avail himself of the acceleration clause in the event of a default in the payment of interest or principal Even without this statutory construction there would be no automatic acceleration; the bond given in connection with the first mortgage provides that the whole of the principal and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal or of interest. In Adler v. Berkowitz (254 N. Y. 433, 436) the court held that when provisions in a bond and mortgage are inconsistent, the terms of the bond control. Since the bond provides that the mortgagee may accelerate at his option, and *788 there is no evidence of the mortgagee making such an option, it must be held that there was no acceleration. Therefore, under the provisions of schedule M of section 258 and subdivision 2 of section 254 of the Real Property Law, and under the language of the bond, the conclusion is that there was no acceleration and that the Statute of Limitations does not bar the action for the unpaid installments.
The amount of the installments over the period of the mortgage total $3,819.60. Eighty-seven installments of $31.83 were due prior to the agreement of October 23, 1953, totaling $2,769.21. On the date of Suozzi’s agreement with plaintiffs, they had collected $420.79 in rents from the mortgaged premises in excess of what was due on the mortgage. This is sufficient to pay all installments due until November 1, 1954 and $7 of the installment due December 1, 1954. Thereafter, 19 installments of $31.83 due up to July 1, 1956 are still unpaid. The principal and interest still unpaid total $629.60.
The judgment demanded in the complaint, but in the amount of $629.60, with interest from the due date of each installment, is granted. However, a 30-day stay of execution of the judgment of foreclosure and sale is also granted. This is to give the defendant an opportunity to pay the judgment.