**UNITED STATES of America ex rel. Harry Carson McNERLIN, Petitioner,**

v.

**Hon. Wilfred L. DENNO, as Warden of Sing Sing Prison, Respondent.**

United States District Court
S. D. New York.
Feb. 27, 1963.

Irving Younger, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for respondent. Ronald J. Offenkrantz, Deputy Asst. Atty. Gen., of counsel.

WEINFELD, District Judge.

Petitioner applies for the issuance of a writ of habeas corpus to obtain his discharge from State custody. He was found guilty by a jury of murder in the first degree in the County Court, Queens County, State of New York. He was sentenced to death on March 24, 1961. The judgment of conviction was affirmed without opinion by the New York State Court of Appeals on February 22, 1962.[1] Thereafter that Court's mandate was amended to state that it had necessarily considered, passed upon, and rejected a contention of denial of due process under the Fourteenth Amendment to the Constitution of the United States by reason of the use against the defendant of an alleged coerced confession.[2] The Supreme Court denied certiorari.[3] Petitioner, appearing pro se, then filed this application and was granted leave to proceed in forma pauperis. This Court appointed counsel to represent him. Before the motion came on to be heard, the Governor of the State extended executive clemency and the death sentence was commuted to life imprisonment. The petitioner then notified the Court that he considered his application for the writ of habeas corpus void, but after consultation with Court-appointed counsel, he indicated he desired to press his motion.

The petitioner's constitutional claim is that the receipt in evidence upon his trial of his confession without legal proof that it was voluntary denied him due process of law. It is urged that a vital flaw exists in the State fact-finding process on the issue of the voluntariness of the confession so that a hearing is required.[4] The essence of this claim is that upon the facts presented the prosecution was relieved of its burden of proof to establish that the confession was voluntary, and instead the burden was cast upon the defendant to prove that it was coerced; further, that the Court's charge, although technically correct, failed to rectify the matter. In addition, the

1. 11 N.Y.2d 738, 226 N.Y.S.2d 443.

2. 11 N.Y.2d 796, 227 N.Y.S.2d 36 (1962).

3. 371 U.S. 850, 83 S.Ct. 88, 9 L.Ed.2d 85 (1962).

4. Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361 (1958). See Brown v. Allen, 344 U.S. 443, 460, 73 S.Ct. 397, 97 L.Ed. 469, and 344 U.S. at 506, 73 S.Ct. 397, 97 L.Ed. 469 (Opinion of Frankfurter, J.) (1953).

petitioner urges that once he testified and put in issue the voluntariness of the confession, the State was constitutionally required to call as witnesses those alleged to have exercised or witnessed the coercion.

The decedent, with whose murder the defendant was charged, was shot and killed on June 19, 1960 at about 11:15 P.M. The petitioner, then 21 years of age, was taken into custody almost immediately after the homicide, at about 11:30 P.M., by a detective and a police officer who had responded to a radio call. He was taken to a local police station where he was questioned by Detective Sealy, the arresting officer to whom he admitted the homicide, and the circumstances under which it was committed. Shortly after midnight, an Assistant District Attorney arrived at the station house and he also questioned the defendant. This interrogation was stenographically taken and transcribed. Among other matters, the defendant related the details of a quarrel with the deceased, his friend, in a bar; his leaving the bar to get a revolver; his return to the bar; and of the homicide. The attack upon the judgment of conviction centers about the receipt of this written confession in evidence.

Upon the trial the defendant was represented by privately retained counsel, a former Assistant District Attorney. Before the confession was offered in evidence, a voir dire examination was conducted at the request of defense counsel. The Assistant District Attorney who had questioned McNerlin was the sole witness upon the preliminary inquiry. He testified that he questioned the defendant at police headquarters and that a detective took the stenographic notes of the questions and answers; that this occurred between 3:30 and 4:30 A.M.; and that a typewritten transcript of the stenographic notes was presented to McNerlin, who read it and signed each page and at the end. The Assistant District Attorney was then cross-examined by defense counsel who developed that the statement was signed by the defendant some time after 5:30 or 6 A.M. He further testified that upon his arrival at the station house he·observed nothing unusual about the defendant and had spent between one half hour and an hour and a half with him, but had not been with him continuously.

Upon the conclusion of the voir dire examination, defense counsel objected to the admission in evidence of the confession "on the ground that there had been no showing that it was obtained without duress." The objection was overruled and thereupon the confession was admitted in evidence and read to the jury. The prosecution presented additional evidence and when it rested the defense moved for dismissal of the indictment "on the ground that the people have failed to prove a prima facie case." Upon denial of the motion, the defense went forward.

McNerlin testified in his own behalf. He swore that on the day of the homicide he had been drinking; that he was without memory of events leading to the shooting of the decedent; that from the time he and the decedent entered the bar where the killing occurred until after he was questioned at the station house he did not recall anything. He acknowledged that he signed the statement, but then testified that the words "came out of my mouth"; that he did not remember everything in it. He also testified that at the station house he had been struck and pushed around by an unidentified police officer, but that he did not "beat, actually beat" him; and that he was told if he did not tell the officer what he wanted to know, he, the defendant, would "never get out of here," and if he made any complaint to a judge or Assistant District Attorney that he was abused or maltreated, "they'd make it bad" for him. McNerlin swore there were five or six officers present, but was uncertain that the Assistant District Attorney, who had questioned him in extenso, was present when he claims he was pushed around. He further testified that he was "afraid" and he gave the answers in the statement only because he was in a state of fear.

With respect to some answers contained in the statement, McNerlin admitted he gave them, but as to others, he testified that the information had been supplied previously by a police officer; in short, that he parroted the answers which related to events touching upon the killing and subsequent thereto. The defendant's recollection as to some matters and lack of recollection as to others is best summed up by the Trial Court's questioning of him:

"The Court: * * * The information in that statement so far as it deals with your employment, where you lived, kind of room you had, where you were in the navy, where you served in the navy, all those things, that was not supplied to you by anybody, was it?

"The Witness: No, I knew that right off the bat.

"The Court: The other things dealing with the shooting, the incident of June 19, 1960, that was all supplied to you previously by the detective?

"The Witness: Yes.

"The Court: Then when the Assistant District Attorney came into the room, he had a stenographer there, he questioned you, you merely voiced the answers which had previously been given to you by the detective and you remembered them, is that it?

"The Witness: Yes, sir."

The prosecution called no witness to rebut this testimony. Upon the close of the entire case, no motion was made to strike from the evidence the confession, nor to exclude it from the jury's consideration. The Trial Judge instructed the jury at length on the issue of the confession. Among other matters, he charged, "If it was the result of the use of threats or fear, regardless of how true the statement may be, you may not consider it * * *." And at another point he instructed the jury, "I repeat, if the statement was not made voluntarily by the defendant it may not be utilized against him, whether it is true or not." No exceptions were taken by the defendant to the charge and no instructions were requested on the subject of the confession. Nonetheless, the judgment of conviction is here attacked for constitutional infirmity.

The thrust of the argument is that the prosecution, in presenting the defendant's confession, relied upon a presumption recognized under New York State law [5] to the effect that the confession was voluntary; that thereupon the burden of going forward to rebut the presumption that the confession was voluntary was shifted to the defendant; that he met this burden by his testimony of the circumstances under which the confession was given; that thereby having repelled the presumption, it was no longer in the case and accordingly the prosecution, upon whom the burden of proof upon the whole case was to establish the defendant's guilt beyond a reasonable doubt and, specifically upon the issue of the confession that it was voluntary, failed to produce any evidence to meet the defendant's charge of coercion. Thus, petitioner urges once the defendant testified that he had been coerced, the presumption that the confession was voluntary was out of the case and the prosecution then affirmatively had to prove its voluntariness. In fine, the contention is that absent any challenge to the verity of petitioner's testimony the presumption yielded and there was no issue of voluntariness to be submitted to the jury. Accordingly, the Court should have excluded the confession as a matter of law—not to have done so, the argument continues, was in practical effect to impose the burden of proof on the issue of the voluntariness of the confession upon the defendant. Petitioner concludes that this shift in the burden of proof on the question of the voluntariness of the confession was in violation of "both New York and federal law."

5. Petitioner cites People v. Rogers, 192 N.Y. 331, 345, 85 N.E. 135, 140 (1908).

■■ It needs no citation of authority to indicate that petitioner cannot here claim that New York law was improperly applied in his case. His argument, therefore, must rest upon the proposition that due process requirements of the Fourteenth Amendment of the Federal Constitution prohibit placing upon a defendant the burden of proof that a confession was not voluntary. While no authority has been cited to support this view, it is unnecessary to decide the issue since the Court finds that in fact the burden of proof was not placed upon the petitioner as he now contends.

The root of petitioner's error is the assumption that since his testimony was unchallenged by the prosecution in rebuttal, this conclusively established that his version of events was true and compelled, as a matter of law, a finding that his confession was involuntary. Such a view treats the defendant's testimony in isolation. It assumes that the prosecution relied solely upon the confession to establish that it was voluntary. It overlooks the fact that the Assistant District Attorney testified with respect to the confession and thus the fact issue was cast. It disregards the highly significant fact that Detective Sealy testified to an earlier oral confession which was substantially the same as the written confession, and that at no time was any claim made that the confession was coerced. Moreover, no request was made, either upon the voir dire examination or after the defendant had testified and the defense had rested, that any of those charged with coercive tactics be called as witnesses.

In the instant case, if anything, the failure of the prosecution to call the policemen who were taxed by the defendant with improper conduct may well have worked to his advantage rather than to his disadvantage. Since his testimony of alleged coercive activity was not challenged by them in rebuttal, he was free to comment upon the prosecution's failure to produce them. His counsel was in a position to request an appropriate instruction which would have permitted the jury to draw an adverse inference by reason thereof.[6] Thus, in going forward, the defendant's testimony, as opposed to that of the Assistant District Attorney, could only have been strengthened by the failure of the prosecution to offer witnesses to repel his testimony on the subject.

Undoubtedly, as the prosecution acknowledged upon the defendant's appeal in the State courts,[7] it would have been preferable to have called rebuttal witnesses, but the failure to do so neither conclusively established that the defendant's testimony was true,[8] nor did it relieve the prosecution of its burden of proof to establish that the confession was voluntary. The issue of fact posed by the testimony of the Assistant District Attorney and the defendant still remained. The prosecution evidently took a calculated risk when it failed to call rebuttal witnesses. It may well have decided that the petitioner's story, as against that of the Assistant District Attorney and the earlier confession which met with no denial by the defendant, was so incredible that further challenge to the defendant's version would be cumulative.[9] The prosecution may have

---

6. See Noce v. Kaufman, 2 N.Y.2d 347, 353, 161 N.Y.S.2d 1, 141 N.E.2d 529 (1957); Perlman v. Shanck, 192 App.Div. 179, 182 N.Y.S. 767 (1st Dept. 1920); Zausmer v. Suozzi, 23 Misc.2d 783, 198 N.Y.S. 2d 482 (Sup.Ct.), modified on other grounds, 11 App.Div.2d 791, 205 N.Y.S. 2d 967 (2d Dept. 1960). Compare People v. Weiss, 252 App.Div. 463, 300 N. Y.S. 249 (2d Dept. 1937), rev'd on other grounds, 276 N.Y. 384, 12 N.E.2d 514, 114 A.L.R. 865 (1938). See generally,

Farber v. Jewish Community Center, 32 Misc.2d 124, 223 N.Y.S.2d 769 (Sup.Ct. 1962).

7. Brief for respondent, New York Court of Appeals, p. 21.

8. Cf. People v. Johnson, 185 N.Y. 219, 225, 77 N.E. 1164 (1906).

9. Cf. People v. Weiss, 252 App.Div. 463, 300 N.Y.S. 249 (2d Dept. 1937), rev'd on other grounds, 276 N.Y. 384, 12 N.E. 2d 514 (1938).

concluded that the defendant's demeanor belied his assertion of coercion.[10] Indeed, a reading of the defendant's examination and cross-examination, particularly with respect to his recollection of some answers and failure to recall other answers in the statement, suggests that the prosecution proceeded upon the view that his testimony was a palpable evasion to overcome the force of incriminating admissions contained in the statement and the jury would likewise so view it. This is highlighted by the Trial Court's questioning of the defendant, already referred to, and indeed defense and prosecution attorneys directed portions of their summations to the matter.

█ Apart from the contention that the burden of proof on the issue of voluntariness was imposed upon the defendant, counsel presses upon the Court the related argument that once the defendant carried his burden of going forward and put in issue the voluntariness of the confession, the prosecution's failure to call the participants in and witnesses to the alleged coercion is a sufficient vital flaw in the State fact-finding process to require an evidentiary hearing in this Court. He relies upon a reference in Stein v. New York:[11]

> "Even where it [New York Court of Appeals] finds that the jury could 'reasonably credit the denial of the police,' if it considers that the prosecution had failed to produce all reasonably available evidence to clear charges of coercion, it will order 'a new trial where there can be a more adequate search for the truth.' People v. Mummiani, 258 N.Y. 394, 401, 403, 180 N.E. 94, 97, 98."

There the Supreme Court was discussing the power of the New York State Court of Appeals under the statute in a capital case, if satisfied for any reason whatever "that justice requires a new trial," to act accordingly.[12] The Court by no means held, nor is it implicit in its statement that unless every available witness on the issue of voluntariness is called by the prosecution a new trial must be granted, or that in the circumstances of the instant case a hearing is required on the petitioner's application. This was not a case of relentless and protracted police interrogation accompanied by unreasonable delay in arraignment or of manifest injuries following questioning which, unexplained, gave support to the defendant's charge of physical abuse and called for an explanation by police officers.[13] It involved word against word as to the circumstances of the confession. Where upon the evidence an issue of fact emerges as to the voluntariness of a confession, there is no absolute requirement that the prosecution call all witnesses or produce all available evidence to give further challenge to the claim of coercion so long as the record discloses a fundamentally fair trial.

Upon a review of the entire record, this Court finds no vital flaw in the fact-finding process which requires a hearing on the current petition.

█ Alternatively, the petitioner urges that even if no vital flaw is found, a hearing should be held and a searching inquiry conducted to set at rest any doubt as to whether the confession was in fact voluntary. He emphasizes Rogers v. Richmond,[14] where the Supreme Court read the ruling of the Court below to mean that even though no vital flaw taints the State Court proceeding, the District Judge is still free not to deem the State Court determination binding, and may take testimony. While this Court is of the view that a wiser course would have been for the prosecution to have called the police officers after the defendant testified, the failure to do so

---

10. Cf. Dyer v. MacDougall, 201 F.2d 265 (2d Cir., 1952).

11. 346 U.S. 156, 172, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953).

12. N.Y. Code Crim.Proc. § 528.

13. Compare People v. Mummiani, 258 N.Y. 394, 180 N.E. 94 (1932).

14. 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361 (1958).

486

does not of itself now require a hearing to take their testimony. The Court's function on this application is a narrow one. It is circumscribed to a consideration of whether the State infringed upon rights guaranteed to the petitioner by the Federal Constitution. A study of the entire record fails to disclose that the defendant was deprived of a fundamentally fair hearing in the determination of the voluntariness of the confession. Under this circumstance, to order a hearing as requested for "a more adequate search for the truth" would be an unwarranted intrusion into the State's administration of criminal justice.

In sum, the Court finds there was no denial of due process of law under the Fourteenth Amendment in the receipt in evidence of petitioner's confession and its submission, under the Court's instructions, to the jury for its determination of the issue of voluntariness. Accordingly, the application for a writ of habeas corpus is denied.

The Court expresses to counsel who accepted the assignment to represent petitioner its appreciation for his able, skillful and conscientious representation of petitioner's interests.