J. Irwin Shapiro, J.
On February 9, 1961 this defendant was found guilty of murder in the first degree by a jury verdict. I denied the motion to set the verdict aside on the grounds then urged and on March 24, 1961 sentenced the defendant to death, as commanded by law. The judgment of conviction was unanimously affirmed by the Court of Appeals without opinion (11 N Y 2d 738).[1] An application for a writ of certiorari made to the Supreme Court of the United States upon the ground that the admission of the defendant’s confession into evidence violated the defendant’s rights under the United States Consti *341 tution was denied pn October 8, 1962 (371 U. S. 850). Thereafter and on October 29, 1962 the defendant applied for a writ of habeas corpus in the United States District Court for the Southern District of New York on precisely the same grounds which he had urged in an effort to obtain a writ of certiorari. The application for a writ of habeas-corpus was denied (Weinfeld, J.) in a written opinion (214 F. Supp. 480). Upon appeal to the United States Court of Appeals for the Second Circuit that'court affirmed the order denying petitioner’s application for a writ of habeas corpus (324 F. 2d 46). The defendant thereupon appealed to the United States Supreme Court, which simultaneously with its reversal of the order denying the petition for a habeas corpus in this case (McNerlin v. Denno, 378 U. S. 575), reversed 10 other convictions affected by its opinion in the now famous case of Jackson v. Denno (378 U. S. 368).
In each of the 12 reversals, the court did not, in the first instance, order a new trial but permitted the State to have a hearing either before the original Trial Judge or some other independent trier of the fact to pass upon the voluntary nature of the defendant’s confession, and further determined that if the confession were held voluntary by such independent trier of the fact, the judgment of conviction would be permitted to stand. In laying down the procedure to be followed, the majority of the court in Jackson said (pp. 393-395): “ It is New York, therefore, not the federal habeas corpus court, which should first provide Jackson with that which he has not yet had and to which he is constitutionally entitled — an adequate evidentiary hearing productive of reliable results concerning the voluntariness of his confession. It does not follow, however, that Jackson is automatically entitled to a complete new trial including a retrial of the issue of guilt or innocence. Jackson’s position before the District Court, and here, is that the issue of his confession should not have been decided by the convicting jury but should have been determined in a proceeding separate and apart from the body trying guilt or innocence. So far we agree and hold that he is now entitled to such a hearing in the state court. But if at the conclusion of such an evidentiary hearing in the state court on the coercion issue, it is determined that Jackson’s confession was voluntarily given, admissible in evidence, and properly to be considered by the jury, we see no constitutional necessity at that point for proceeding with a new trial, for Jackson has already been tried by a jury with the confession placed before it and has been found guilty. True, the jury in the first trial was permitted to deal with the issue of voluntariness and we do not know whether .the conviction rested *342 upon the confession; but if it did, there is no constitutional prejudice to Jackson from the New York procedure if the confession is now properly found to be voluntary and therefore admissible. If the jury relied upon it, it was entitled to do so. Of course, if the state court, at an evidentiary hearing, redetermines the facts and decides that Jackson’s confession was involuntary, there must be a new trial on guilt or innocence without the confession’s being admitted in evidence.
“ Obviously, the State is free to give Jackson a new trial if it so chooses, but for us to impose this requirement before the outcome of the new hearing on voluntariness is known would not comport with the interests of sound judicial administration and the proper relationship between federal and state courts.”
In line with the conclusion of the majority opinion that (p. 395) “ the State is free to give [the defendant] a new trial if it so chooses” the District Attorney, for reasons which have been made known to the court and which the court considers to be entirely proper, has requested that no ‘ ‘ new hearing on voluntariness ” be afforded the defendant. It thus becomes necessary for the court to determine whether a new trial should or must be ordered. In passing upon that issue it may not be amiss to discuss the import of the Jackson opinion and the legal revolution which it has caused.
The court in Jackson concisely set forth the then existing practice for admitting confessions in New York .State when it said (pp. 377-378): “ Under the New York rule, the trial judge must make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary. But if the evidence presents a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inferences to be drawn from undisputed facts, the judge ‘ must receive the confession and leave to the jury, under proper instructions, the ultimate determination of its voluntary character and also its truthfulness. ’ Stein v. New York, 346 U. S. 156, 172. If an issue of coercion is presented, the judge may not resolve conflicting evidence or arrive at his independent appraisal of the voluntariness of the confession, one way or the other. These matters he must leave to the jury.”
The majority of the court thereupon proceeded to determine (p. 381) that the New York rule, the constitutional validity of which it had sanctioned and upheld in Stein v. New York (supra) only 11 years before, “failed to take proper account of the dangers to an accused’s rights ” since it proceeded “ [o]n the *343 assumption that the jury found the confession voluntary ’ ’ and because this judgment was arrived at only on the further assumptions that the jury had actually found the disputed issues of fact against the accused and that these findings were reliably arrived at in accordance with considerations that are permissible and proper under federal law.” It said that “ [t]hese additional assumptions * * * were unsound” because “ The New York jury is at once given both the evidence going to voluntariness and all of the corroborating evidence showing that the confession is true and that the defendant committed the crime. The jury may therefore believe the confession and believe that the defendant has committed the very act with which he is charged, a circumstance which may seriously distort judgment of the credibility of the accused and assessment of the testimony concerning the critical facts surrounding his confession.
44 "In those cases where without the confession the evidence is insufficient, the defendant should not be convicted if the jury believes the confession but finds it to be involuntary. The jury, however, may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession, a policy which has divided this Court in the past, see Stein v. New York, supra, and an issue which may be reargued in the jury room. That a trustworthy confession must also be voluntary if it is to be used at all, generates natural and potent pressure to find it voluntary. Otherwise the guilty defendant goes free. Objective consideration of the conflicting evidence concerning the circumstances of the confession becomes difficult and the implicit findings suspect.
44 "The danger that matters pertaining to the defendant’s guilt will infect the jury’s findings of fact bearing upon voluntariness, as well as its conclusion upon that issue itself, is sufficiently serious to preclude their unqualified acceptance upon review in this Court, regardless of whether there is or is not sufficient other evidence to sustain a finding of guilt ” (pp. 381-383).
The prevailing New York rule was thereupon held to be violative of the defendant’s constitutional rights.
However one may feel with regard to the court’s conclusion about the dangers to a defendant’s rights under the assumptions predicated by it, we cannot help but conclude that the court diminished the force of its reasoning when it sanctioned, as constitutional, the procedure under what is known as the Massachusetts rule. It conceded that by following the procedure used in that State [4]
[4] no more will be known about the views of the jury than under the New York rule, the jury does *344 not hear all confessions where there is a fair question of voluntariness, but only those which a judge actually and independently determines to be voluntary, based upon all of the evidence. The judge’s consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge’s conclusions in this regard and his findings upon the underlying-facts may be express or ascertainable from the record.
" Once the confession is properly found to be voluntary by the judge, reconsideration of this issue by the jury does not, of course, improperly affect the jury’s determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence ” (p. 378, n.).
As Mr. Justice Black aptly pointed out in his dissent (p. 404): “If, as the Court assumes, allowing the jury to pass on the voluntariness of a confession before the judge has done so will ‘ seriously distort ’ the jury’s judgment, I fail to understand why its judgment would not be similarly distorted by its being allowed to pass on voluntariness after the judge has decided that question. Yet, of course, the jury passing on guilt or innocence must, under any fair system of criminal procedure, be allowed to consider and decide whether an offered confession is voluntary in order to pass on its credibility. But it should be obvious that, under the Court’s new rule, when a confession does come before a jury it will have the judge’s explicit or implicit stamp of approval on it. This Court will find it hard to say that the jury will not be greatly influenced, if not actually coerced, when what the trial judge does is the same as saying ‘ I am convinced that this confession is voluntary, but, of course, you may decide otherwise if you like.’ ”
And as Mr. Justice Hablas said in his dissent (pp. 436-438): “ The hollowness of the Court’s holding is further evidenced by its acceptance of the so-called ‘ Massachusetts rule, ’ see ante, pp. 378-379 and note 8, under which the trial judge decides the question of voluntariness and, if he decides against the defendant, then submits the question to the jury for its independent decision. Whatever their theoretical variance, in practice the New York and Massachusetts rules are likely to show a distinction without a difference. Indeed, some commentators, and sometimes the courts themselves, have been unable to see two distinct rules.
“ The Court finds significance in the fact that under the Massachusetts rule " the judge’s conclusions are clearly evident *345 from the record, ’ and ‘ his findings upon disputed issues of fact are expressly stated or may be ascertainable from the record. ’ Ante, p. 378-379. It is difficult to see wherein the significance lies. The ‘ judge’s conclusions ’ are no more than the admission or exclusion of the confession. If the confession is admitted, his findings of fact, if they can be ascertained, will, realistically, either have no effect on review of the conviction for constitutional correctness or will serve only to buttress an independent conclusion that the confession was not coerced. Indeed, unless the judge’s findings of fact are stated with particularity, the Massachusetts rule is indistinguishable from the New York rule from the standpoint of federal direct or collateral review of the constitutional question. Whichever procedure is used, the reviewing court is required to give weight to the state determination and reverse only if the confessions are coerced as a matter of law. See Lisenba v. California, 314 U. S. 219, 236-238; Payne v. Arkansas, 356 U. S. 560, 561-562.
“ The heart of the supposed distinction is the requirement under the Massachusetts rule that the judge resolve disputed questions of fact and actually determine the issue of coercion; under the New York rule, the judge decides only whether a jury determination of voluntariness would be ‘ against the weight of the evidence. ’ See, supra, p. 428. Since it is only the exclusion of a confession which is conclusive under the Massachusetts rule, it is likely that where there is doubt — the only situation in which the theoretical difference between the two rules would come into play — a trial judge will resolve the doubt in favor of admissibility, relying on the final determination by the jury.
“ The fundamental rights which are a part of due process do not turn on nice theoretical distinctions such as those existing between the New York and Massachusetts rules.”
Aside from its contention that constitutional requirements outlaw a confession whose voluntary nature is not factually independently passed upon by a body or Judge other than the trial jury, the majority of the court also finds (p. 389, n.) that, “ Further obstacles to a reliable and fair determination of voluntariness under the New York procedure result from the ordinary rules relating to cross-examination and impeachment. Although not the case here, an accused may well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination, both of whose prejudicial effects are familiar. The fear of such impeachment and extensive cross-examination in the presence of the jury *346 that is to pass on guilt or innocence as well as voluntariness may induce a defendant to remain silent, although he is perhaps the only source of testimony on the facts underlying the claim of coercion. Where this occurs the determination of voluntariness is made upon less than all of the relevant evidence. Cf. United States v. Carignan, 342 U. S. 36.”
The court apparently entirely overlooked the fact that if the court should find the confessions voluntary and then submit that issue anew to the jury (the Massachusetts) rule, as Judge Black believes is probably constitutionally required (see Black, J., dissent p. 402),[2] the defendant, if the court is correct, may still 1 ‘ well be deterred from testifying on the voluntariness issue when the jury is present because of his vulnerability to impeachment by proof of prior convictions and broad cross-examination, both of whose prejudicial effects are familiar. The fear of such impeachment and extensive cross-examination in the presence of the jury that is to pass on guilt or innocence as well as voluntariness may induce a defendant to remain silent, although he is perhaps the only source of testimony on the facts underlying the claim of coercion. Where this occurs the determination of voluntariness is made upon less than all of the relevant evidence. Cf. United States v. Carignan, 342 U. S. 36” (p. 389, n.).
If the defendant fails to take the stand before the jury upon the trial of the main issue, where he has taken the stand and testified before the Judge alone, the proof going to the jury on his behalf — on the question of the voluntary nature of the question — is less embracing than the proof independently submitted to the original trier of that fact.[3] What happens, *347 however, if the defendant takes the stand for a second time when the issue of the voluntary nature of the confession is presented before the jury? May he then be cross-examined about any inconsistencies or alleged inconsistencies in the testimony that he previously gave in the absence of the jury? If he may, is not the defendant placed in a more onerous position under the Jackson rule than he was under the New York rule obtaining prior to Jackson, because he is thus submitted to two cross-examinations? Again, if such cross-examination is permitted, the jury, either explicitly or implicitly, may become aware of the court’s factual determination that the confession was voluntary, or at least surmise that such was the case, and in either event it is naive to believe that the jury will not be almost perhaps decisively influenced by the court’s determination on that issue.
The above discussion of Jackson points out some, but by no means all, of the questions left unanswered by that decision, and the difficulties which it imposes (unnecessarily, I believe) upon the administration of the criminal law.[4]
Since the United States Supreme Court remanded this case to the District Court “ to allow the State a reasonable time to afford ” the defendant “ a hearing or a new trial ” (p. 396), and since the District Attorney has declined to proceed with a hearing on the voluntary nature of the defendant’s confession, to which “he is now entitled” (Jackson, p. 394), the verdict of the jury finding the defendant guilty of murder in the first degree, and the judgment entered thereon, are vacated and set aside and a new trial is ordered.

. On April 11, 1962 I wrote the Governor that “this is peculiarly a case for the exercise of executive clemency ” because “ the killing here was the result of a bar-room dispute and was not occasioned by any criminal activities on the part of the defendant ” and because of the “ defendant’s prior record of pathological intoxication while in the armed forces and the senseless nature of the killing.” The Governor extended executive clemency and commuted the sentence to one of life imprisonment.

. Judge Black said (p. 401): “In fact, I would be far more troubled about constitutionality should either a State or the Federal Government declare that a jury in trying a defendant charged with crime is compelled to accept without question a trial court’s factual finding that a confession was voluntarily given. Whatever might be a judge’s view of the voluntariness of a confession, the jury in passing on a defendant’s guilt or innocence is, in my judgment, entitled to hear and determine voluntariness of a confession along with other factual issues on which its verdict must rest.” However, the majority opinion seems to hold that a State may permit a Judge alone to make a conclusive finding on the question of voluntariness which must be accepted by the trial ju/ry for in its opinion (n. 19) the court says “ [wjhether the trial judge, another judge, or another jury, but not the convicting jury, fully resolves the issue of voluntariness is not a matter of concern here. To this extent we agree with Stein [346 U. S. 156] that the States are free to allocate functions between judge and jury as they see fit.” (Italics ours.)

. This procedure, in and of itself, would tend to bedevil the trial for counsel in summation, and the court in his charge, would have to be most careful to refer only to testimony which was heard by the trial jury and not by the court alone, on the seme issue, in their absence,

. In Richardson on Evidence (9th ed.), Dean Prince suggests that “It would seem the desirable procedure to have the trial judge make the preliminary determination and to have him do so just before the commencement of the defendant’s trial — more particularly, just before the jury is selected. At the time of this writing, however, the procedure to be followed in conducting the preliminary hearing awaits clarification from the courts or from the legislature.” It would seem reasonably clear that in the absence of legislation permitting a split trial or a preliminary hearing (see, for examples of such legislation, Code Grim. Pro., sees. 813-e, 813-e, the suppression statute, and Penal Law, secs. 1045, 1045-a, 1250, the two-phase homicide trial) the court could not hold an evidentiary hearing on the voluntary nature of the confession “just before the commencement of the defendant’s trial — more particularly, just before the jury is selected”. In view of the requirements of Jackson, legislation permitting such a preliminary hearing to be held “just before the jury is selected” would seem to be in order for the purposes of expediting the trial proper after the jury is selected and also because it may avoid bringing the same witnesses back to court repeatedly.