**Vincent E. DUGUAY**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

April 18, 1968.

Irving Friedman, Lewiston, for appellant.

John W. Benoit, Asst. Atty. Gen., Augusta, for appellee.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice

On appeal from the order of dismissal of a petition for the statutory writ of post-conviction habeas corpus.

The petitioner was convicted of murder in the Superior Court in Androscoggin County in 1960 and is at present serving the life sentence there imposed upon him. He attempted unsuccessfully to have his conviction set aside on appeal (State v. Duguay, 158 Me. 61, 178 A.2d 129 (1962)) and he has three times previously sought

post-conviction relief. His last previous petition for post-conviction habeas corpus was dismissed by a single justice in the Superior Court on May 13, 1964. There was no appeal. This was some five weeks before the decision of the United States Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

The present petition was brought on September 20, 1966. This time the petitioner urges that his conviction was obtained in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution in that a confession which was obtained from him as a result of psychological pressure was admitted in evidence, over his objection, without a reliable judicial determination as to voluntariness by the judge at a preliminary hearing, out of the presence of the jury, as is required by the holding of the United States Supreme Court in *Jackson*. The petitioner refers to the written confession which was introduced at State's Exhibit 22.

The respondent moved to dismiss this petition for the reason that the allegation concerning the petitioner's confession was not raised in petitioner's last previous petition for writ of habeas corpus and that therefore petitioner was barred from presenting this claim in the pending petition. The respondent was relying upon 14 M.R.S.A. § 5507 which reads:

"All grounds for relief claimed by a petitioner under this remedy must be raised by a petitioner in his original or amended petition, and any grounds not so raised are waived unless the State or Federal Constitution otherwise requires or any justice on considering a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition. A petitioner who has previously entered a petition under the Revised Statutes of 1954, chapter 126-A or under chapter 129, sections 11 and 12 shall not be granted the writ under this remedy unless the court on considering the petition finds grounds for relief asserted therein which could not reasonably have been raised in said previous petition."

The justice below found that the petition asserted no grounds for post-conviction relief and was frivolous and dismissed it without hearing and without appointment of counsel. 14 M.R.S.A. § 5506 requires the justice to refuse to appoint counsel below if he finds the petition to be frivolous or without merit. The petitioner entered this appeal and the justice below appointed counsel to represent him on appeal.

14 M.R.S.A. § 5502, which creates our statutory post-conviction habeas corpus action, authorizes its use under certain circumstances:

"* * * provided that the alleged error has not been previously or finally adjudicated or waived in the proceeding resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction."

At the time of petitioner's trial the procedure for determination of the voluntariness of a confession later approved by Jackson had been followed by the courts of this State for many years. State v. Grover, 96 Me. 363, 52 A. 757 (1902); State v. Priest, 117 Me. 223, 103 A. 359 (1918); State v. Robbins, 135 Me. 121, 190 A. 630 (1937).

It would appear from the record which is before us that the several issues as to the voluntariness of petitioner's confession and the procedure under which it was presented to the jury were matters which had either been adjudicated or waived at trial and thus would have been barred by the principle of res adjudicata (§ 5502, supra), or could have been but were not raised in one of the petitioner's previous post-conviction petitions and thus barred by waiver (§ 5507, supra)—except for the possible impact of *Jackson*.

As it has been noted, *Jackson* was decided some two years after the petitioner's

conviction became final. The rule of *Jackson* has no effect upon this petitioner's appeal unless the rule is to have retroactive application. Therefore, the principal issue before us now is whether the holding of Jackson v. Denno is to be applied retroactively or prospectively.

Professor Glassman concluded his brief study of the retroactivity of constitutional decisions (Glassman, Maine Practice, § 35.9) with the words:

> " * * * [T]he determination whether a constitutional rule will be given retroactive effect involves a complex of values and conflicting interests which are sometimes difficult to balance. The ultimate arbiter invariably must be the United States Supreme Court, but certainly state courts will be called upon to determine initially whether a given constitutional decision should or should not be given retroactive effect."

In *Jackson,* the petitioner, who had been convicted of murder in the courts of the state of New York, had brought a petition for the writ of habeas corpus attacking the New York procedure for determination of the issue of the voluntariness of a confession. Under the New York procedure the judge excludes the confession if he finds that it could not under any circumstances be considered voluntary but if the evidence presents a fair question as to its voluntariness he submits it to the jurors without making a finding but with instructions to disregard it if they find it to be involuntary and to give it weight on the issue of guilt or innocence if they find it voluntary, returning in either case only a general verdict. The court held that this method did not permit a reliable determination of the voluntariness of the confession and that it was unacceptable under the Due Process Clause of the Fourteenth Amendment. The court held that procedures in the trial court must

> " * * * be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend."

The court found that both the Massachusetts rule and the so-called orthodox rule satisfy these constitutional requirements. Jackson v. Denno, supra, footnote at page 386, 84 S.Ct. at page 1786, 12 L.Ed. at page 924. We have followed the Massachusetts rule in Maine and as we have already applied the rule of *Jackson* prospectively in State v. Merrow, 161 Me. 111, 208 A.2d 659 (1965), where we examined its requirements in detail, it will be sufficient for these purposes to describe it as one under which the trial judge conducts a hearing in the jury's absence on the question of voluntariness of the confession. If he finds it to be involuntary it is excluded. If he determines it to be voluntary he makes a finding to that effect (which is not revealed to the jury) and the confession is admitted with instructions to the jury to make its own determination as to voluntariness and to give it weight only if it finds it to have been voluntary.

A study of the language of *Jackson* itself does not reveal whether the Court intended its rule to be given general retroactive application (as was that of Gideon v. Wainwright [1] and Griffin v. State of Illinois [2]) or only prospective application (as that of Mapp v. State of Ohio [3], Escobedo v. State of Illinois [4] and Miranda v. Arizona [5]). The fact that the rule was ap-

1. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963).

2. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed.2d 891, 55 A.L.R.2d 1055 (1956).

3. Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

4. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

5. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

plied retroactively as to Jackson himself is not conclusive as to the Court's intentions as to other cases which had been concluded before the date of that decision.

However, the language used and reasoning expressed by the Court in later decisions in which principles determinative of the application of constitutional rulings were examined convinces us that the Court intended a general retroactive effect to be given by *Jackson*. We refer particularly to Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). In *Linkletter* the Court, after examining the history of application of constitutional holdings, concluded that the Constitution neither requires nor forbids the Court to give retroactive application to its decisions. The *Linkletter* opinion tested the *Mapp* rule (which it was urged to apply in favor of a petitioner whose conviction had become final before *Mapp* was announced) against three criteria—the purpose of the rule, the reliance which had been placed on previous contrary decisions, and the effect on the administration of justice to be expected from retroactive application, and concluded that *Mapp* should be applied prospectively only.

We consider it significant that in *Linkletter* the Court distinguished the *Mapp* principle from rulings regarding coerced confessions which had been given retroactive application noting that coerced confessions are excluded because of a "complex of values" as contrasted with the single purpose of preventing lawless police activity which it said in part justified the merely prospective application of *Mapp*.

In *Tehan*, the Court found that the doctrine of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which held it constitutionally impermissible for a State to permit comment by a judge or prosecutor upon a defendant's failure

to testify, should have only prospective application. The Court there made use of the three standards of *Linkletter*. It distinguished between the purposes of *Griffin* and *Mapp* and the purposes of retroactively applied doctrines such as those involving the wrongful use of a confession which, the Court said, infect a criminal proceeding with the clear danger of convicting the innocent. The Court also noted that as to the *Griffin* rule, there had long been a substantial and justified reliance by many states upon a contrary policy which would, turning to the third test, have a serious impact upon the administration of justice in those states.

In *Johnson* the Court refused to apply the Escobedo rule to a case which had become final prior to the date of the *Escobedo* decision. The Court found the purpose of the *Escobedo* doctrine to be to guarantee full effectuation of the privilege against self-incrimination and decided that prisoners already had the benefit of existing case law on voluntariness and that retroactive application was not necessary to accomplish its purpose. The Court said, in language which we consider significant here:

"As Linkletter and Tehan acknowledged, however, we have given retroactive effect to other constitutional rules of criminal procedure laid down in recent years, where different guarantees were involved. For example, in Gideon v. Wainwright, * * * which concerned the right of an indigent to the advice of counsel at trial, we reviewed a denial of habeas corpus. Similarly, Jackson v. Denno, * * * which involved the right of an accused to effective exclusion of an involuntary confession from trial, was itself a collateral attack. *In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.'*"

\*  \*  \*  \*  \*  \*

"Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree. *We gave retroactive effect to Jackson v. Denno, supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature."* (Citations omitted. Emphasis added)

Our conclusion as to retroactivity based upon a study of the language and the reasoning of the United States Supreme Court decisions is reinforced by the manner of disposition of three other cases which were before that Court in which we consider that retroactivity is implicit. In McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed.2d 1041 (1964) and Owen v. State of Arizona, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964), memoranda decisions concerning petitions for writs of habeas corpus, each bearing the same date as *Jackson,* the Court in fact treated the *Jackson* rule retroactively when it remanded the cases for further proceedings not inconsistent with *Jackson.* See also State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963) and U. S. ex rel. McNerlin v. Denno, 2 Cir., 324 F.2d 46, affirmed 214 F.Supp. 480 (1963). Again, in Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964), a per curiam decision, the United States Supreme Court clearly gave retroactive effect to *Jackson* although without mentioning retroactivity. Petitioner had been finally convicted long before *Jackson.* The Court found that the West Virginia procedures under which the voluntariness of the petitioner's confession was determined were not "fully adequate to insure a reliable and clear cut determination of the voluntariness of the confession" under the *Jackson* standards and ordered a new hearing under appropriate standards as to that issue in the State Courts.

We conclude that it was the intention of the United States Supreme Court that the rule of *Jackson* should apply not only to *Jackson* but to all defendants reaching the Court on valid process whose confessions were admitted without an adequate hearing upon the voluntariness of their confessions under procedures which complied with the requirements of the *Jackson* rule, subject to recognized principles of waiver. Their right to such a hearing is a federal constitutional right, binding on the states and the Supremacy Clause of Article VI of the United States Constitution requires its obedience. Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967).

We find the courts of several other states have treated the *Jackson* rule retroactively. People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (1965); Commonwealth ex rel. Butler v. Rundle, 416 Pa. 321, 206 A.2d 283 (1965); People v. Walker, 374 Mich. 321, 132 N.W.2d 87 (1965). This construction was approved in strong dicta by the Supreme Court of Alabama (Duncan v. State, 278 Ala. 145, 176 So.2d 840, 848 (1965)). See also U. S. ex rel. Gomino v. Maroney, 231 F.Supp.154 (1964); Glassman, Maine Practice, § 35.9 supra. On the other hand, the rule has been applied prospectively only in Minnesota (State ex rel. Rasmaussen v. Tahash, 272 Minn. 539, 141 N.W.2d 37 (1966)).

Appeal sustained. The petition is remanded to the Superior Court for appointment of counsel, opportunity to amend if amendment is desired, and hearing.

WEBBER, J., did not sit.

DUFRESNE, J., sat at argument but did not participate in the decision.